Philip F. STEIN, Trustee (Plaintiff), Appellant-Respondent,

v.

STATE TAX COMMISSION of Missouri et al. (Defendants), Appellants-Respondents.

No. 50103.

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

Lewis, Rice, Tucker, Allen & Chubb, James A. Singer, J. L. Pierson, John Torrey Berger, Jr., Clayton, for appellant.

Norman C. Parker, St. Louis County Counselor, Edward Lander, Asst. County Counselor, Clayton, for respondents.

HOLMAN, Judge.

Petitioner (hereinafter referred to as plaintiff) has appealed from a judgment of the circuit court affirming two decisions of the State Tax Commission upon review proceedings under Section 536.100 et seq.[1] Involved is the assessment of real estate known as Manhassett Village (located in Richmond Heights, St. Louis County) for the years 1961 and 1962. (The two proceedings were consolidated in the circuit court.) The defendants are the State Tax Commission of Missouri, Howard L. Love, John A. Williams, J. Ralph Hutchison, Commissioners of the Missouri State Tax Commission; James W. Hopkins, Director of Revenue, St. Louis County, Missouri; Frank J. Antonio, Assessor, St. Louis County, Missouri; James F. Bell, Collector of Revenue, St. Louis County, Missouri; and A. B. Riley, Collector, City of Richmond Heights, Missouri. Prior to the time the taxes for each year became delinquent the trial court, upon motion of plaintiff, made an order permitting plaintiff to pay the undisputed portion of the tax to the county collector and to deposit the amount of the disputed part with the circuit clerk, and further ordered that plaintiff (by so doing) would "incur no interest or penalties on any amounts due or claimed to be due on said taxes." Defendants have appealed from the part of the judgment based upon those orders.

1. All statutory references are to RSMo 1959, V.A.M.S.

■ We have appellate jurisdiction because the case involves the construction of the revenue laws of the State. Article V, § 3, Constitution of Missouri 1945, V.A.M.S.

The real estate in question is a tract of 19.63 acres with improvements thereon consisting of apartment buildings containing 354 apartments, a detached garage, and minor buildings. The property was acquired by plaintiff on August 31, 1960, through the purchase of all of the stock of the Longmoor Corporation for the sum of $2,000,001, the sole asset of said corporation being the real estate here involved. At the time of the 1961 hearing all of the apartments were rented, and only four were vacant at the time of the 1962 hearing. It appeared that the improvements on the property were insured for $2,300,000.

It is contended by plaintiff that his purchase of the property was an arm's-length transaction and that the purchase price represented the true market value. The evidence, however, did not disclose that the real estate was placed on the open market for sale prior to the time it was purchased by plaintiff. One item in the contract of sale which would undoubtedly have an effect on the purchase price was the provision that the sale was made subject to a lease whereby Apartment "A" had been leased to a tenant under a lease expiring September 30, 1970, at a rental of $1 per year.

In 1961 the property was valued by the assessor for assessment purposes at $799,440. Plaintiff appealed to the County Board of Equalization which board affirmed the assessment. Plaintiff then appealed to the State Tax Commission (hereinafter sometimes referred to as "Commission") and a hearing was held on October 4, 1961. At that hearing the plaintiff relied on the facts heretofore stated concerning the alleged arm's-length purchase of the property.

The County produced as a witness Melville B. Martin, a deputy assessor, who testified that property in St. Louis County is assessed at one third of its true market value; that the property in question was appraised by him at a total of $2,398,532 and was therefore assessed at $799,440; that in August and September 1961, he had inspected both the exterior and the interior of the property and re-affirmed that appraisal; that the appraisal method used was replacement cost, less depreciation, plus the value of the land, although "the valuation is checked by various other methods"; that in 1959 Roy Wenzlick Company appraised this property for the County and fixed its value at $2,796,000; that that figure had been accepted by the Assessor of St. Louis County but on May 2, 1961, was revised and reduced. At the conclusion of the hearing the Commission reduced the assessed valuation for 1961 to $716,660.

In 1962 the property was assessed by the assessor at the amount fixed by the Commission the previous year, to wit, $716,660. Plaintiff appealed to the County Board of Equalization, which board affirmed the assessment. He appealed from that ruling to the State Tax Commission and a hearing was held on September 19, 1962.

In addition to the evidence of the sale price of the property in 1960, plaintiff at that hearing produced as a witness John W. Gregory, a real estate broker and appraiser. It developed that Mr. Gregory had been employed by the Board of Equalization to appraise the property and had made a report to the board. He appraised the property by the use of one method at $1,760,000 and by the use of another method at $1,944,486. He finally expressed the opinion that it had a fair market value of $2,000,000. This witness explained, however, that before reporting to the board, he "did not have enough time to make a complete accurate appraisal of the property."

The County produced as a witness William A. Thomas who testified that he was the supervisor in charge of residential and multiple-family appraisals for St. Louis County; that he had re-inspected this property on September 6, 1962, in preparation for the hearing. He also produced 16 cards which he said were original records of the

county assessor's office, made in the regular course of business and kept under his supervision and control, which cards were admitted in evidence without objection. These cards reflected the valuation placed upon this property by the Roy Wenzlick Company as described in connection with the 1961 hearing. He expressed the opinion that the true market value of this property was $2,149,980. When this witness was asked to recite what the records in evidence showed concerning the Roy Wenzlick valuation there was an objection that this testimony would be hearsay and he was permitted to testify thereto subject to that objection. He also testified that property for that year was assessed at one third of its true market value.

In regard to the 1962 assessment the Board found that the assessed valuation fixed by the assessor was not capricious, arbitrary, or intentionally discriminatory, and affirmed the assessed valuation in the amount of $716,660.

■■ In our review of the orders of the State Tax Commission we agree that there "is no such thing in assessments as an absolute 'true value,' and an assessment is, at best, a mere estimate." Cupples Hesse Corp. v. State Tax Commission, Mo.Sup., 329 S.W.2d 696, 700. We also have in mind that we are not permitted to substitute our discretion for discretion legally vested in the Commission and should not set aside its findings unless such are "unsupported by competent and substantial evidence upon the whole record"; or are "for any other reason, unauthorized by law"; or are "arbitrary, capricious or unreasonable"; or that they involve "an abuse of discretion." Section 536.140, subsection 2, (3), (4), (6), (7).

Upon plaintiff's appeal it is his contention that since there was an arm's-length sale of the property in 1960, the sale price was, in effect, conclusive as to its true market value and therefore it should have been assessed at $666,667; that because of that evidence and the corroborating testimony (as to 1962) of Mr. Gregory, and the absence of any substantial evidence justifying a valuation at a larger sum, the findings of the Commission were unlawful, unfair, arbitrary, and capricious and should be set aside.

■ We certainly do not agree that the sale price of this property is conclusive as to its true market value. It is common knowledge that a purchaser will sometimes obtain a bargain and thus pay less than the true value for property, and, on other occasions, will pay more than the true value to obtain certain property. As one witness expressed it, "you might get a bargain or you might get stung." It is also obvious that in this case the fact that one apartment was leased for ten years at a rental of $1 per year would have an effect upon the purchase price.

■ We have concluded that the assessment valuation fixed by the Commission for each year was supported by substantial evidence and was therefore not arbitrary, capricious or unreasonable. In that connection it is interesting to note that the valuation fixed by the Commission only exceeded the valuation for which plaintiff contends by approximately $50,000, a differential of less than 8%.

In regard to the 1961 assessment there are two items of evidence which support the valuation fixed by the Commission. Mr. Martin, a qualified appraiser, fixed the market value of this property at $2,398,532. Also, there was testimony which disclosed that the Wenzlick Company had appraised the property at $2,796,000 in 1959. At the 1962 hearing Mr. Thomas, an experienced appraiser, expressed the opinion that the true market value of the property was $2,149,980. Records in evidence also disclosed the valuation of $2,796,000 that had been placed on the property in 1959 by the Wenzlick Company. We rule that the foregoing items of evidence constitute substantial evidence supporting the valuation fixed by the Commission as to each year involved.

■ Plaintiff contends that we should not consider evidence concerning the appraisal of the Wenzlick Company in connection with the valuation for the year 1962 because such was objected to as hearsay. We do not agree. The evidence concerning that appraisal was contained in records of the assessor which were admitted after plaintiff's counsel had stated he had no objection thereto. The objection now under consideration was interposed when the witness was asked to merely recite what was written on the records in evidence. We have considered the record evidence and hence the similar verbal testimony is of no consequence. This contention is ruled adversely to plaintiff.

We will next consider the appeal of defendants. As heretofore indicated, plaintiff, upon order of court, deposited with the circuit clerk checks payable to the county collector for the amount of the undisputed tax due for each year. The collector accepted those checks and made distribution of said money to the various public corporations entitled thereto. The disputed portion of the tax was deposited with the circuit clerk and the court ordered that plaintiff would not incur any interest or penalties on any amount of tax found to be due. Defendants contend that the court had no jurisdiction to make said orders.

■ "Ordinarily, unless directed by statute, a tax collector is under no duty to accept a part payment of a given tax or to accept an amount less than the entire tax due." Annotation, 84 A.L.R. 774. Our case of State ex rel. Stone v. Kansas City, Ft. S. & M. Ry. Co., Mo.Sup., 178 S.W. 444, is in accord with the quoted rule. However, in this case, since the collector actually accepted and distributed a portion of the tax due, we rule that the collector may not collect any interest or penalties upon said amount.

■ In regard to the tax due on the disputed portion of the assessment, we hold that the court had no authority to order that plaintiff incur no liability for interest and penalties upon depositing the amount of said tax with the circuit clerk. Our reasons for that conclusion are clearly stated in the recent case of American Airlines, Inc. v. City of St. Louis, Mo.Sup., 368 S.W.2d 161, which was decided after the orders herein were made. Therein we stated: "It is the general rule that, in the absence of statutory authorization, the courts have no power to relieve delinquent taxpayers from penalties imposed by statute. The principle is not affected by the fact that the taxpayer will suffer hardship by reason of paying the penalties. Nor is the principle affected by the facts that the taxpayer is contesting in good faith the validity of the tax, and that the penalties have largely accumulated while the litigation is pending respecting the validity of the tax. 85 C.J.S. Taxation § 1031, p. 599; 96 A.L.R. 925–937; 147 A.L.R. 142–147. Missouri is in harmony with this principle. Norborne Land Drainage Dist. Co. of Carroll County v. Cherry Valley Tp. of Carroll County, 325 Mo. 1197, 31 S.W.2d 201.

"And no Missouri case has been cited in which it is held that a court in the exercise of its equitable jurisdiction or power may stay, waive or remit or refuse to enforce statutory exactions of delinquent tax penalties * * *. And if the courts have not the power to relieve delinquent taxpayers from statutory penalty exactions, upon final judgment, we are not able to see the sound basis for the contention that statutory penalties are in effect procedurally circumvented and the legislative exactions judicially vitiated by payment, pending litigation, of the amounts of contested taxes into the registry of the court pursuant to court order entered before or after the taxes were delinquent." 368 S.W.2d l. c. 167. There is no contention that there was any statutory authorization for the procedure followed in this case.

It is our view that plaintiff will be required to pay such statutory interest and penalties as may be due upon the unpaid portion of the taxes in question at the time such are paid by him to the collector. Since

the orders under review were invalid, we are of the opinion that they should be set aside and that the amounts paid by plaintiff to the clerk, in accordance therewith, should be ordered refunded to him.

That part of the judgment which affirmed the assessments fixed by the State Tax Commission is hereby affirmed. The portion of the judgment and the orders from which defendants appealed are reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

All concur except HENLEY, J., not sitting.