**STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Appellant,**

v.

**Raymond Bernard FINCH, M.D., Respondent.**

**No. KCD 27073.**

Missouri Court of Appeals,
Kansas City District.

Sept. 3, 1974.

Motion for Rehearing and/or Transfer
Denied Oct. 7, 1974.

Application to Transfer Denied
Nov. 12, 1974.

John C. Danforth, Atty. Gen., Jefferson City, Albert J. Stephan, Jr., St. Louis, for appellant.

Delton L. Houtchens, Clinton, Guinn W. Bronson, Independence, for respondent.

Before DIXON, C. J., and SHAN-GLER, PRITCHARD, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

This case arises from administrative proceedings on the application of Dr. Finch under Section 334.040 (all statutory references being to RSMo 1969, V.A.M.S., unless otherwise specified) for a license to practice medicine. After the Board denied his right to take the licensing examination, Dr. Finch filed complaint to the Administrative Hearing Commission under the provisions of § 161.302. From an order of the Commission ordering that Dr. Finch be permitted to take the examination, the Board sought judicial review under Chapter 536 and Rule 100, V.A.M.R. The Circuit Court affirmed the order of the Commission, and the Board appeals.

During the pendency of the case in the Circuit Court, the Board filed a motion to stay the Commissioner's order. However, the trial·court refused to issue a stay, Dr. Finch then proceeded to take the examination pursuant to the Commission's order, and he has received a passing grade. The Board nevertheless refuses to issue a license, on the ground that Dr. Finch is otherwise disqualified because of certain felony convictions. The parties agree that despite Dr. Finch's taking and passing the examination, the issues are not moot; and that if the Board's contentions on this appeal are correct, then the Commission's order should be reversed, but that if its contentions are incorrect, then a license should be issued.

The underlying facts are stipulated. In April, 1961, Dr. Finch was convicted in California of first degree murder of his wife and of a conspiracy to commit that murder, both charges being felonies under California law. He was sentenced to life imprisonment on each conviction, to be served concurrently. The details of the sordid background of these crimes and of the brutal killing appear in the appellate opinion affirming the convictions, People v. Finch and Tregoff, 213 Cal.App.2d 752, 29 Cal.Rptr. 420 (1963) and need not be repeated here. Based upon those convictions, Dr. Finch's medical license in California was revoked on July 4, 1964, and has not been reinstated.

Dr. Finch entered the California penitentiary system in 1961, being confined first in maximum security at San Quentin prison. He was transferred to a medium security institution in 1965, to a minimum security institution in 1967, and to a min-min security institution in 1968. In October of 1971, he was admitted to parole. During all this period of imprisonment, he was a "model prisoner." In addition to working the required hours at prison assignments, he spent many hours every day reading medical journals and books, kept in good physical condition by exercise, helped reorganize the Tennis Club, counseled and helped other inmates, and related well to staff and inmates alike. During his last three years in prison he assumed great responsibility as Chief of Research and Statistics and worked on projects that benefited the California Department of Corrections, other inmates and himself.

At the time Dr. Finch was released on parole, the City of El Dorado Springs, Missouri, was actively searching through a "Doctor Procurement Committee" for a doctor to serve at the County Hospital located in the city and to replace the only full-time staff doctor, who had suffered a heart attack in the summer of 1969. This committee approached Dr. Finch with an invitation to come to El Dorado Springs with the intent that he would be able to get a Missouri license and practice in their city. Dr. Finch accepted that invitation, after his release on parole he arrived in El Dorado Springs in early 1971 and since that time he had been employed as an X-ray technician at the Cedar County Memorial Hospital. At no time prior to the issuance of that invitation or the arrival of Dr. Finch in Missouri did either the com-

mittee or Dr. Finch inquire of or consult with the appellant Board as to whether he would be permitted to be examined for licensure.

On November 30, 1972 (two years after arrival in El Dorado Springs), Dr. Finch filed the application to the Board now in question. As supporting proof of his rehabilitation and moral qualification to practice medicine despite the California convictions, Dr. Finch offered a wide-ranging array of evidence. It is stipulated that he is a member of the St. Elizabeth Church in El Dorado Springs, where he attends Mass regularly. All members of the Ministerial Association of El Dorado Springs, consisting of six clergymen, would testify that Dr. Finch "enjoys a reputation for moral character which is above reproach."

Five California doctors who practiced with Dr. Finch prior to his conviction and who maintained personal contact with him while in prison would testify that "in their opinion he is ready for full integration into society and the practice of medicine" and they would testify without reservation "that his moral character since his conviction is the very best and in their opinion he could be of great service to any community, his patients and to society as a whole, if he were licensed to practice." In addition, five Missouri doctors in and around El Dorado Springs would testify that they have known Dr. Finch as a friend and associated with him as an X-ray technician and they would without exception say "that his moral character is the very best."

Still further, Dr. Finch submitted himself to psychiatric examination at the Menninger Clinic where he was examined by Dr. Karl Menninger and Dr. Tobias Brocher, both psychiatrists, and Dr. R. E. Schulman, a psychologist and attorney. The result of that examination appears in a Consultation Report which states in part that Dr. Finch "is not a danger to anyone now and was a danger in the past in an unique and unrepeatable situation * * * he has learned to contain his desires

through internal controls * * * Dr. Finch is able to more than adequately handle the responsibilities of medical practice. If we believe in rehabilitation, then Dr. Finch must be given this last important key necessary for total and complete return to carrying out his responsibilities and duties as a citizen and trained physician * * * There is no indication that he is unstable, dangerous, or in any way harmful. The man's intellect is keen and it would be in the best interest of those he would serve as well as in his best interest if he could again practice medicine and surgery."

Still further, 18 business and professional people in the El Dorado Springs area, all of them being civic leaders and governmental officials, were prepared to testify that Dr. Finch "is a respected citizen in the community and enjoys an undisputed reputation for good moral character." This group of leading citizens included among others the president of the Chamber of Commerce, the president of the local bank, the Chief of Police, the Sheriff, the presidents of the Rotary and Lions Clubs, the Commander of the local American Legion, the president of the local chapter of the American Legion, the president of the local chapter of the American Association of University Women and the president of the local chapter of the Missouri Federated Women's Clubs.

Finally, on this subject of rehabilitation, Dr. Finch's parole officer would testify that he is a conscientious worker, cooperates fully with the department, and enjoys a reputation in the community of good moral character.

The appellant Board, at Dr. Finch's request, did grant him an informal hearing with respect to his application on May 5, 1973, at which time Dr. Finch offered evidence as outlined above. The very next day the Board denied Dr. Finch's application, the letter of denial stating in part:

"The Board is sympathetic to the concept of rehabilitation. However, it does

not believe that it is suitable or appropriate to the best interests of the people of the State of Missouri to paradoxically permit an individual who has brutally murdered his wife to reenter the practice of medicine—a profession which peculiarly and uniquely is dedicated to the prolongation of human life. On the basis of this determination alone the Board would deny your request.

&ast; &ast; &ast; &ast; &ast; &ast;

"The Board recognizes that it has the discretion to grant you the right to be examined for licensure to practice in this state; but, after thorough and complete evaluation of all the facts before it, the Board hereby denies your request."

After the filing of complaint by Dr. Finch before the Commission, the Hearing Commissioner examined Dr. Finch in person, as well as receiving the stipulation from the parties. The Commissioner then made detailed findings of fact and conclusions of law, reaching the decision that Dr. Finch satisfied the requirements of § 334.-031 and was entitled to be examined by the Board pursuant to § 334.040. The Commissioner's conclusions included the following (of which the first sentence more accurately should be considered as the ultimate finding of fact):

"The overwhelming evidence before this Commission supports a finding that Petitioner is rehabilitated, presently has good moral character, and if licensed, would be an asset to the medical profession. Petitioner has satisfied the requirement of good moral character in Section 334.031, RSMo 1969 and is qualified to take Respondent's written examination for licensure. Respondent's determination not to examine Petitioner is therefore under the law unreasonable, arbitrary, and constitutes an abuse of discretion."

On this appeal, the Board's points of error are as follows: 1) that the Commission's decision is an unauthorized invasion of a discretion granted by statute to the Board; and 2) that the Commissioner's decision is not based upon substantial evidence.

I.

The Board's principal argument in this case is that the evaluation of Dr. Finch's past conduct and of his present moral character was a matter to be decided in the discretion of the Board, subject only to judicial review by a court under the Administrative Procedure and Review Act, Chapter 536. The statutes of this state did provide originally for just what the Board contends. The provisions of § 334.100, as initially enacted, admits of no other possible interpretation. That section provides that the Board "may refuse to license individuals of bad moral character, or persons guilty of unprofessional or dishonorable conduct" and unquestionably was intended originally to give the Board the primary responsibility for determining those matters. However, this is only the background for and not the end of our inquiry.

A.

The original situation described changed radically with the enactment in 1965 of the Administrative Hearing Commission Act, § 161.252 et seq. This new statute provides in § 161.302, that when any of certain specified licensing agencies, among which is included the appellant Board, refuses to permit an applicant to be examined upon his qualifications for licensure, that applicant may file a complaint before the Administrative Hearing Commission and have a hearing of the issues by the Commission. Section 161.322 provides that the procedure before the Commission shall be governed by Chapter 536, and § 161.332 provides for judicial review under Chapter 536. The purpose and intent of this new Administrative Hearing Commission Act was explicated by this court in State ex rel. American Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission, 461 S.W.2d 902 (Mo.App.1970), in which Judge Howard pointed out at l.c. 908 that by the

new statute, "the legislature intended sweeping changes in the hearing procedures theretofore provided by law for the 15 licensing bodies * * *". Judge Howard further emphasized that the vice sought to be corrected was that these licensing agencies had previously "acted as investigator, prosecutor, judge, jury and executioner, all rolled into one." Judge Howard then summarized the purpose and intent of this legislation, as follows:

"In such a situation, even the best intentioned individuals could not function with actual and complete fairness and inpartiality. Prejudgment of a case was inevitable. It was to remedy this situation that the Administrative Hearing Commission Act was passed, setting up an imparital tribunal to hold evidentiary hearings and make findings of fact and conclusions of law upon the evidence presented by the licensing board on one side, and by the licensee (or the applicant for a license) on the other side."

See also the excellent special project study by Sandberg, Edgar and Rohrer, "Fair Treatment for the Licensed Professional: The Missouri Administrative Hearing Commission," 37 Mo.L.Rev. 410 (1972).

■ In line with this legislative purpose to create a completely new hearing procedure for the granting and revocation of licenses, the General Assembly included as part of this statute, S.C.S.S.B. 284, a Section 11, Laws 1965, pages 277, 280, which provides: "Any provisions of existing statutes pertaining to the administrative agencies listed in section 3 which are in conflict with this act are repealed." This Section 11 has been omitted by the Revisor of Statutes from and no reference thereto appears in the Missouri Revised Statutes 1969. Nevertheless, the original enactment "is the best evidence of the Legislature's purpose and intent" and "[s]ubsequent revisions purporting, without enactment, to change the substantive law, may not be utilized to defeat this intent and purpose." Protection Mutual Insurance Co. v. Kansas City, Mo., 504 S.W.2d 127, 1.c. 130–131 (Mo.1974).

■ In the case of the Board here, as was held with respect to the Missouri Real Estate Commission in American Institute of Marketing Systems, the licensing agency has lost all statutory authority to conduct evidentiary hearings into the qualifications of applicants for licensure. As held in American Institute of Marketing Systems at 1.c 906: "Now, under the Administrative Hearing Commission Act, if the board determines to deny the application, the hearing on qualification is to be held by the administrative hearing commission, on complaint of the applicant."

### B.

The Board contends however that nothing of the foregoing has any effect in the present situation. In support of its position, the Board seeks to distinguish between questions of fact and what it claims to be its right to exercise discretion with respect to matters of good moral character and professional or dishonorable conduct by applicants. The thrust of the Board's argument is that only questions of fact have been entrusted by the legislature to the Administrative Hearing Commission; that the only question of fact in this case is whether Dr. Finch committed a felony; and that since that fact is stipulated and admitted, and since the statute specifies that commission of a felony shall be deemed "dishonorable conduct", there is nothing really for decision by the Commission at all, other than to dismiss the Finch complaint.

That argument by the Board is faulty on several counts. First and foremost, the distinction sought to be drawn between findings of fact and the exercise of discretion lacks logic. Whether or not the discretion shall be exercised in favor of admitting Dr. Finch to licensure depends upon many factual elements. For example, the Board itself recognizes in its letter of denial that the precise nature of the felony makes a difference. So, also, different re-

sults may ensue depending upon the amount of time spent in prison, the period of time which has expired since release from prison, the exact nature of the conduct and attitudes evidenced by the applicant since the conviction, the applicant's present reputation in the community, and perhaps many other elements. In any event, the discretion as to whether the applicant is to be admitted cannot be exercised wisely or even reasonably except as a natural consequence of a consideration and determination of the entire factual congeries.

■ The Board's attempt to confine the area of factual determination here to the single question of whether Dr. Finch committed a felony would carry persuasion if the statute made disqualification mandatory on proof of a felony conviction. However, that is not so. The legislature did not intend, and the Board does not argue, that an applicant should be invariably and automatically disqualified because of a prior commission of a felony. It was for that reason that § 334.100, as originally enacted, provided that the Board "may" refuse to license for that reason. The use of the term "may" necessarily implies that the denial is not mandatory, and that the conferee of the power has the discretion in exercising it. Smith v. State Board of Medical Examiners, 46 Ga.App. 456, 167 S.E. 769 (1933). And since there is a discretion to be exercised, it follows that there are factual considerations to be taken into account, the determination of which must be reasonable and is subject to judicial review. Kehr v. Garrett, 512 S.W.2d 186, decided by the Missouri Court of Appeals, St. Louis District, July 9, 1974. See also Barsky v. Board of Regents, 347 U.S. 442, 451, 74 S.Ct. 650, 655, 98 L.Ed. 829 (1954), holding that a State may delegate discretionary power to a board to refuse a medical license because of criminal convictions, where there is a determination, after opportunity for a fair hearing, "whether the convictions, if any, were of such a date and nature as to justify denial of admis-

sion to practice *in the light of all material circumstances before the board."* (emphasis added)

■ It is inconceivable that the legislature intended any separation of the exercise of discretion from the determination of facts which are necessarily preliminary to and decisive of how that discretion is to be exercised. Furthermore, a conclusion that such a separation was intended, as argued for by the Board, would conflict with the ruling in American Institute of Marketing Systems, 1.c. 906, which holds that the Administrative Hearing Commission Act "was obviously designed to, and we believe it does, cover *all* contingencies wherein the Missouri Real Estate Commission, *and the other licensing boards listed in this section,* were theretofore authorized to hold hearings." (emphasis added)

Still another reason for rejecting the statutory construction argued for by the Board is that to do otherwise would raise serious constitutional problems. One such problem would be that of procedural due process. If the Board were correct, it would have the right to exercise a discretion concerning the licensure of applicants without holding any hearing whatsoever. This is the necessary result of the Board's position, since under American Institute of Marketing Systems, it no longer has any power to hold hearings or make findings of fact. The discretionary denial of a license under those circumstances might very well be vulnerable under the due process requirement that such a licensing discretion can be exercised only "after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 217, 70 L.Ed. 408 (1926), quoted with approval in Willner v. Committee on Character and Fitness, 373 U.S. 96, 103, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963).

Another constitutional question which would be raised by accepting the Board's

statutory interpretation is that of equal protection of law. Any discretion exercised in a manner unrelated to factual findings could be vulnerable to serious charges that this constituted arbitrary action. See Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Richardson v. Ramirez, —— U.S. ——, 94 S.Ct. 2655, 41 L.Ed.2d 551, decided June 24, 1974.

### C.

The Board vainly seeks support for its position by attempting to draw an analogy to the revocation of an existing license. The Board points out that under § 161.292, the revocation procedure is for the Board to file a complaint before the Commission, and the Commission holds a hearing and makes findings of fact and conclusions of law as to whether the licensee has given cause for revocation. If the Commission does find such cause, then it must refer the case to the licensing agency with recommendations as to disciplinary action. Notwithstanding those recommendations, the licensing agency is the one which determines what disciplinary measure should be applied. The Board argues from this that the legislature did intend a separation between fact finding functions and exercise of discretion, and that by analogy the Board in the present case should be deemed to have the discretion to evaluate Dr. Finch's conduct and what is appropriate action with respect to granting him a license.

The analogy is completely false. Aside from any other distinctions, the dominating difference in the two situations is that the legislature in the case of revocation proceedings under 161.292 has specifically provided that a fact finding hearing be held by the Commission in advance of the stage where the Board is called upon to exercise a discretion. This results in the Board having the full benefit of the Commission's factual determination at the time it is called upon to determine appropriate disciplinary action. In our situation, to the

contrary, the Board tries to argue for a situation in which it would undertake to exercise a purported discretion without any hearing powers of its own and in advance of any hearing held by the Administrative Hearing Commission. The vast difference between these two situations is patently obvious.

Additionally, it should be pointed out that in the case of license revocations, the legislature purposefully and distinctly set forth a precise division of functions, leaving no room for doubt or speculation as to the legislative intention. No similar division of functions has been specified with respect to original licensure covered by § 161.302.

### D.

■ Summarizing: the Administrative Hearing Commission Act vested authority in the Commission to find the facts with respect to the seriousness of Dr. Finch's original felonious conduct, the extent to which he has repented and rehabilitated himself and all other factors bearing on whether he should be eligible for licensing. The Act further authorized the Commission to make conclusions of law (based on the facts found) as to whether Dr. Finch should be considered an eligible candidate. These powers conferred upon the Commission are inconsistent with the retention of a controlling discretion in the latter regard by the Board, and the original primacy granted to the Board in this regard must therefore be held to have been repealed by Section 11 of the Administrative Hearing Commission Act.

### II.

The Board's second point of error is the claim that the Commission's decision is not based on substantial and competent evidence. In connection with this argument the Board lays heavy emphasis upon the viciousness and depravity of Dr. Finch's crimes committed in 1959, and it argues in its brief that "the evidence relating to the

convictions so eclipses any good inferences to be drawn from respondent's post-conviction conduct as to make the decision of the Commission contrary to the overwhelming weight of the evidence."

The standard for review as to the sufficiency of the evidence in this case is prescribed by § 161.332 which in turn adopts by reference the rule contained in § 536.140. The latter section provides that the judicial inquiry "may extend to a determination of whether the action of the agency * * * [i]s unsupported by competent and substantial evidence upon the whole record * * *". The decisions interpreting this standard of review hold that the reviewing court is not to weigh the evidence for itself, but rather is required to view the evidence in the light most favorable to the decision of the tribunal, giving to the administrative decision the benefit of all reasonable inferences to be derived from the evidence produced. Tom Boy, Inc. v. Quinn, 431 S.W.2d 221, 225 (Mo. banc 1968); Marshfield Community Bank v. State Banking Board, 496 S.W.2d 17, 27 (Mo.App.1973).

Applying that standard of review here, the evidence is amply sufficient to support the findings of the Commission. Dr. Finch's crimes, which the Board would emphasize to the exclusion of everything else, occurred 15 years ago and his conviction was 13 years ago. Since that time, he has conducted himself in an exemplary manner and according to all of the evidence he appears to have sincerely repented and has accomplished a solid rehabilitation. The Commission would have been seriously remiss if it had followed the course apparently advocated by the Board of refusing to give any weight to the impressive evidence of rehabilitation contained in the record.

The loftiest goal of penology is rehabilitation of the fallen member of society, and the courts have been highly sympathetic to that goal and have been strongly inclined to give effect to sincere rehabilitation when it occurs. An extreme example occurred in Board of Governors of Registered Dentists of Oklahoma v. Brown, 182 Okl. 1243, 76 P.2d 1074 (1937) where the Oklahoma Supreme Court held that a dentist convicted of second-degree murder had rehabilitated himself during the year and a half after his conviction and the court reversed the administrative body which had suspended him because of the conviction from the practice of dentistry. See also Tanner v. De Sapio, 2 Misc.2d 130, 150 N.Y.S.2d 640, 644 (1956), holding:

"However, this Court refuses to subscribe to any philosophy that assumes that a person once dishonest may not by future conduct acquire good moral character. If such be the case, the State should alter its programs now in force in correctional institutions whereby reformation of convicts is undertaken. The duty of respondent in the instant case was to determine whether or not the applicant was of good moral character at the time she applied for the licenses. It would of course be proper to consider a former conviction, but that would not necessarily prevent the issuance of a license."

It is hard to conceive of stronger proof of rehabilitation than that which has been presented on behalf of Dr. Finch in the present case. If evidence is ever to be sufficient to justify a finding of good moral character, this case must be deemed to qualify. By no stretch of the imagination can it be said that the Commission's findings concerning rehabilitation are not supported by substantial evidence.

As a secondary attack upon the evidence, the Board complains of the receiving into evidence and consideration by the Commission of the "Consensus Report" prepared by Dr. Schulman, over the objection by the Board that this report was hearsay. Even if the Board's objections to this piece of evidence were sound, that could not be decisive of the sufficiency of the evidence as a whole, since this consensus report was

only one piece of evidence out of much other. However, the Board's hearsay objection is not sound. Dr. Schulman actually participated in the examination of Dr. Finch and in the consultations with his two colleagues at Menninger Clinic, and it has been stipulated that he would testify to those facts and to the fact that he prepared the consultation report which was received into evidence as Exhibit B. That foundation is sufficient to permit admission of this report within the business record exception to the hearsay rule. Ellis v. State Department of Public Health and Welfare, 285 S.W.2d 634 (Mo.1956).

▇▇▇ The judgment is modified, under the authority of § 536.140(5) and Rule 84.-14, to direct the Board to issue a license for the practice of medicine to Dr. Finch. As so modified, the judgment is affirmed.

DIXON, C. J., and SHANGLER, J., concur.

PRITCHARD, J., concurs in separate opinion, in which SWOFFORD, J., joins.

SOMERVILE, J., dissents in separate opinion.

PRITCHARD, Judge (concurring).

The dissenting opinion from the holding of the majority opinion states that the latter dogmatically holds that since the enactment of the Administrative Hearing Commission Act of 1965, appellant Board has lost all statutory authority to make any *initial determination* as to the fitness of applicants for licensure. That is not what the majority opinion says. It merely points up that the licensing agency has lost all statutory authority to conduct *evidentiary hearings* into the qualifications of applicants for licensure. The majority opinion correctly applies State ex rel. American Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission, 461 S.W.2d 902, 906 (Mo.App.1970), in its refer-

ence that it is only after denial of an application that a hearing on qualification is to be held by the Administrative Hearing Commission. With respect to appellant Board's refusal to permit respondent to take the examination, which now, upon his passing it, has ripened into a refusal to issue him a license, the statutory procedure has come into play. The dissenting opinion is not inaccurate in stating that an *initial* discretionary power is still vested in appellant Board to determine whether an applicant is fit or unfit to practice medicine in this state.

But the dissenting opinion is incorrect in construing § 334.100 that the Legislature intended, in an exercise of the police power of the state, to draw the narrow distinction between individuals of bad moral character and those guilty of unprofessional and dishonorable conduct (i. e. the statutory specification that conviction of a felony shall be "deemed" to be unprofessional and dishonorable conduct). It may be that conviction of a felony will precede in point of time [and remain a fact (as in this case)] the determination of fitness of an applicant for a license. The words "shall be deemed to be unprofessional and dishonorable conduct" have no more than an evidentiary application. If the evidence should show bad moral character, as that term is generally understood, it would support a conclusion to that effect. If the evidence showed a conviction of a felony, then the conclusion or judgment is proscribed by statute. The word "deem" means "2. to come to view, judge or classify after some reflection" * "1. to form or have an opinion." Webster's Third New International Dictionary, p. 589; see also: City of Rolla v. Studley, 120 S.W.2d 185, 187 (Mo.App.1938). Thus, the word "deemed" in § 334.100 does not prescribe any greater degree of discretion vested in appellant Board than the words "bad moral character", but only eliminates a consideration of the judgment upon which must rest the exercise of discretion. The dissenting opinion seems to conclude that the mere fact of felony conviction will preclude, in

an absolute exercise of appellant Board's discretion, respondent from re-entering his profession. That conclusion ignores the plain terms of § 161.252 et seq., and the statute providing for review of the Administrative Hearing Commission's specified findings of fact and conclusions of law on the issue. The *real* issue is clearly whether upon all the facts, appellant Board has abused its discretion or has acted in an arbitrary, capricious or unreasonable manner in refusing respondent, first, an opportunity to be examined upon his professional qualifications, and second, having passed his examination, a license. The disposition of the real issue is keyed to § 536.140, subd. 2, "The inquiry [of the court] may extend to a determination of whether the action of the agency; * * * (6) Is arbitrary, capricious or unreasonable; [or] (7) Involves an abuse of discretion." The procedure in effect after the enactment of § 161.332 is that the review by the circuit court shall be upon the record made by the Administrative Hearing Commission, i. e. upon *its* findings of fact, made after hearing the evidence, and *its* conclusions of law. This procedure is the salutory change made by the Legislature to avoid the circuit court's impossible task of reviewing a barren record made in an administrative agency as was formerly the case.

It is true that § 536.140, subd. 5, provides that "the court shall not substitute its discretion for discretion legally vested in the agency." But that limitation does not mean that the court may not review the facts and determine thereon whether the agency has acted in an arbitrary, capricious or unreasonable manner, or whether it has abused its discretion under the preceding provisions of § 536.140. "An abuse of discretion is an erroneous finding and judgment which is clearly against and contrary to the facts or the logical deductions from the facts and circumstances before the court; which is untenable and clearly against reason which works an injustice, and not justified by the evidence." Biggs v. Biggs, 397 S.W.2d 337, 343 (Mo.App.

1965); see also: 1 Words and Phrases, 335 et seq. Upon this judicial standard this case should be ruled for these reasons: This case is not one that the measure of the denial of respondent's right to re-enter his profession is that of a single subjective fact, conclusive in itself, that he has been convicted of felonies which, standing alone, bar him from his profession. Rather, there are *objective standards* in this case by which appellant Board's refusal to issue him a license may be measured to ascertain if that action constituted an abuse of discretion. That objective standard is encompassed in these *uncontroverted* facts: While respondent was imprisoned pursuant to his 1961 convictions, he was a model prisoner who rendered aid to fellow inmates and to the California Department of Corrections. When he came to El Dorado Springs, his conduct continued to be above reproach, according to the citizens, including all ministers, of that city. Significant it is that five California doctors would have testified that respondent was "ready for full integration into society and the practice of medicine", and "his moral character since his conviction is the very best and in their opinion he could be of great service to any community, his patients and to society as a whole, if he were licensed to practice." The five Missouri doctors in and around El Dorado Springs would have testified as to respondent's very best moral character. The two psychiatrists and the psychologist-attorney of Menninger Clinic concluded that respondent is not a danger to anyone now; there was no indication that he is unstable, dangerous, or in any way harmful; his intellect is keen and it would be in his best interest and the best interest of those he would serve if he could again practice medicine and surgery. These medical opinions, moreover, point up that there is at least some division of opinion between the members of appellant Board and those members of the profession who have personal knowledge of respondent as to whether he should be allowed to re-enter his practice of medicine and surgery. The Menninger Clinic report fur-

ther points up that there is no necessity to apply the standards of § 334.100 for the protection of the public in an exercise of the police power of the state. It is further a well-known fact that there is a great shortage of physicians to serve rural areas such as El Dorado Springs, and the evidence shows that there is indeed a shortage of medical practitioners in that area. All of this evidence was ignored by appellant Board, and it gives support by substantial evidence to the findings and conclusions of law of the Administrative Hearing Commission that the refusal of the appellant to permit respondent to be examined as to his qualifications, which are now established, and to issue him a license, was and is an abuse of discretion. Respondent has shown that "under the law" (Section 161.-322), he is entitled to these considerations.

Other matters should be mentioned. The dissenting opinion · says that § 536.140, subd. 3, the reviewing body is precluded from weighing the evidence if the action of the agency under review involved the exercise of discretion in the light of the facts. There is no necessity to weigh the evidence in this case. The facts are not disputed as to respondent's convictions and his subsequent full rehabilitation. The only issue is whether under these two sets of facts appellant Board abused its discretion in denying respondent's application.

The "one commissioner" whose duty it is to hold a hearing upon the complaint of any person who is refused an examination or a license by an agency, and to make findings of fact and conclusions of law, is required by § 161.252 to "be an attorney at law admitted to practice before the supreme court of Missouri." In enacting the Administrative Hearing Act the Legislature certainly did intend that the actions of appellant Board be reviewed under its procedure. The holding of the majority opinion does no violence to the important functions of the Board initially to pass upon the fitness or unfitness of persons to practice medicine in this state.

It is not required that § 334.100 say that "conviction of a felony", *absent a showing of rehabilitation* "shall be deemed unprofessional and dishonorable conduct" where the facts are to be reviewed to ascertain if there has been an abuse of discretion. Biggs v. Biggs, supra.

With the foregoing remarks, I concur fully in the majority opinion.

SWOFFORD, J., concurs.

SOMERVILLE, Judge (dissenting).

I must respectfully dissent. The majority opinion, relying upon State ex rel. Amercian Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission, 461 S.W.2d 902 (Mo.App.1970), dogmatically holds that since enactment of the Administrative Hearing Commission Act in 1965 (Sections 161.252 to 161.342, inclusive, RSMo 1969, V.A.M.S.) the State Board of Registration for the Healing Arts has lost all statutory authority to make any initial determination as to the fitness of applicants for licensure to practice medicine and surgery in this state. Parenthetically, it should be noted that extensive references in the majority opinion to Finch's rehabilitation serve only to emotionally cloud the real issue. Fervid references can equally be made to the Hippocratic Oath taken by Finch when he originally became a member of the medical profession in the State of California and the medical profession's hallowed and time honored dedication to the prolongation of human life, all inexorably steeped in the practice of medicine. However, they too serve only to emotionally cloud the real issue.

I do not believe that State ex rel. American Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission, 461 S.W.2d 902 (Mo.App.1970), is subject to the sweeping conclusions attributed to it by the majority opinion. However, if it is, then the instant case points up a compelling need to reexamine the all encompassing

conclusion that the majority opinion ascribes to it.

A careful analysis of *American Institute of Marketing Systems, Inc.* discloses that for all practical purposes it viewed the issue presented as involving suspension or revocation of existing real estate license, although, cosmetically, the case originally arose from applications for renewal of such licenses. To the extent that *American Institute of Marketing Systems, Inc.* holds that the fifteen agencies specified in Section 161.272, RSMo 1969, V.A.M.S., of the Administrative Hearing Commission Act, are statutorily precluded from initially hearing or exercising any discretion regarding the suspension or revocation of an existing license, no fault or disagreement can be lodged. Sections 161.282 to 161.292, RSMo 1969, V.A.M.S., of the Administrative Hearing Commission Act, clearly disclose a legislative intent to vest the administrative hearing commission with exclusive original jurisdiction to hear all cases involving suspension or revocation of existing licenses and to enter findings of fact and conclusions of law relating thereto. However, to the extent, if any, that *American Institute of Marketing Systems, Inc.* is ascribed as constituting authority that the State Board of Registration for the Healing Arts is precluded from originally determining, in the exercise of its discretion, whether or not an applicant is entitled to initially be licensed to practice medicine and surgery in this state, I must and do respectfully dissent and disagree. First, if such preclusion is professed to exist in *American Institute of Marketing Systems, Inc.,* it must be read from dictum contained therein since, as heretofore pointed out, it dealt, for all practical purposes, with the issue of suspension or revocation of existing real estate licenses. Second, if such preclusion is professed to rise from more than mere dictum, I must and do respectfully disagree with *American Institute of Marketing Systems, Inc.,* to the extent that it stands as precedential authority in this case, as held in the majority opinion, *that the State Board of Registration for the Healing Arts is precluded from originally determining, in the exercise of its discretion, whether or not an applicant is entitled to initially be licensed to practice medicine and surgery in this state.* I do so after careful deliberation of a trilogy of statutory acts which I sincerely believe disclose a contrary legislative intent. More precisely, reference is made to Section 536.140, RSMo 1969, V.A.M.S. (a section of what is commonly referred to as the Administrative Procedure Act), Sections 161.302 and 161.322, RSMo 1969, V.A.M.S., (constituent sections of what is commonly referred to as the Administrative Hearing Commission Act), and Section 334.100, RSMo 1969, V.A.M.S. (relating to the licensure of persons to practice medicine and surgery in the State of Missouri), which will hereinafter be dealt with, hopefully, in depth, insofar as they cast any light on the intent of the legislature relative to the precise issue in this case.

The State Board of Registration for the Healing Arts initially refused to permit applicant Raymond Bernard Finch to be examined upon his qualifications for licensure to practice medicine in this state. As a practical matter such constituted a threshold refusal to grant him a license to practice medicine and surgery in the State of Missouri.

Thereafter, as noted in the majority opinion, Finch filed a complaint with the administrative hearing commission which, after a hearing, ordered the Board to give him the examination prescribed in Section 334.040, supra. The administrative hearing commission's order ensued from the following findings of fact and conclusions of law:

"The overwhelming evidence before this Commission supports a finding that Petitioner is rehabilitated, presently has good moral character, and if licensed, would be an asset to the medical profession. Petitioner has satisfied the requirement of good moral character in Section 334.031, RSMo 1969 and is qualified to take Respondent's written exami-

nation for licensure. Respondent's determination not to examine Petitioner is therefore under the law unreasonable, arbitrary, and constitutes an abuse of discretion."

The Board sought judicial review of the administrative hearing commission in the Circuit Court of Cole County under Section 161.332, RSMo 1969, V.A.M.S., and therein requested the court to stay the order of the administrative hearing commission which was refused. Perforce, the Board was left with no alternative but to give Finch the examination prescribed in Section 334.040, supra. Finch achieved a passing grade on the prescribed examination, but the Board steadfastly refused to issue him a license to practice medicine and surgery in the State of Missouri, and timely appealed to this court. As further noted in the majority opinion, the issue on appeal is whether the order of the administrative hearing commission should be affirmed or reversed, and such constitutes a viable issue on appeal and has not been rendered moot by the unusual circumstances that occurred below with respect to Finch's having taken the examination prescribed in Section 334.040, supra, and achieving a passing grade thereon.

The Board's dual refusal, in the first instance to permit Finch to take the examination prescribed by Section 334.040, RSMo 1969, V.A.M.S., and, in the second instance, to grant him a license after achieving a passing grade in the referred to examination, was predicated upon the fact that Finch had been convicted of a felony, the brutal murder of his wife, in the State of California. Finch's conviction of the referenced felony stands undisputed.

Section 334.100, supra, so far as relative to the issue before this court, unequivocally and with lucidity provides:

"1. *The board* [referring to the State Board of Registration for the Healing Arts] *may refuse to license* individuals of bad moral character, *or persons guilty of unprofessional or dishonorable con-*

*duct;* . . . Without limiting the foregoing general language, *the following specifications shall be deemed unprofessional and dishonorable conduct* within the meaning of this section: . . . (4) *Conviction of a felony;* . . . . (Emphasis added.)

In view of the above, I see no escape from the conclusion that the legislature intended to and did draw a sharp distinction between persons of "bad moral character" and persons "guilty of unprofessional or dishonorable conduct". The rationale for this sharp distinction appears to lie in the premise that "bad moral character" is determined relative to the time at hand, as opposed to the premise that guilt of "unprofessional or dishonorable conduct" is determined both prior to and relative to the time at hand. Consequently, a person may currently be possessed of good moral character, rather than "bad moral character", yet still be currently guilty of "unprofessional or dishonorable conduct" in view of past transgressions.

Furthermore, in view of Section 334.100, supra, I see no escape from the additional conclusion that the legislature intended to and did vest the State Board of Registration for the Healing Arts with broad discretion to refuse to license persons to practice medicine in this state *statutorily* deemed guilty of *"unprofessional and dishonorable conduct"*, e. g. conviction of a felony, regardless of when the felonious transgression occurred in point of time. The Supreme Court of Missouri in State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 65 S.W.2d 943, 950 (1933), observed that in examining the "object of our Medical Practice Act [an earlier counterpart of present Chapter 334, RSMo 1969, V.A.M.S., Physicians and Surgeons] as a whole, *we find it to be an exercise of the inherent police power of the state in the protection of its people attempting to secure to the people the services of competent practitioners learned and skilled in the science of medicine,* of good moral character *and honorable and reputable in profes-*

*sional conduct.*" The practice of medicine is properly fraught with public interest and concern that far exceeds that involved in all other licensure areas, save only the legal profession. Standards and qualifications that might adequately protect the public in other licensure areas could fall far short of doing so in licensure of persons to practice medicine.

Bearing Section 334.100, supra, in mind, attention now focuses on Section 161.302 and 161.322, supra, of the Administrative Hearing Commission Act. That portion of Section 161.302, supra, deemed pertinent to the issue herein, with unmistakable clarity, provides as follows:

"*Upon refusal by any agency* . . . to permit an applicant to be examined upon his qualification for licensure . . . such applicant may file, . . . a complaint with the administrative hearing commission. . . . *If at the hearing the applicant shall show that under the law he is entitled to examination for licensure* . . . the administrative hearing commission shall issue an appropriate order to accomplish such examination. . . ." (Emphasis added.)

The first four words contained in Section 161.302, supra, "*Upon refusal by any agency*", clearly demonstrate that the legislature, enactment of the Administrative Hearing Commission Act notwithstanding, recognized that the State Board of Registration for the Healing Arts, and it alone, was still clothed with the discretionary power granted by Section 334.100, supra, to initially determine whether an applicant was fit or unfit to practice medicine in this state. It is pertinent to note that the State Board of Registration for the Healing Arts consists of seven persons, all of whom are members of the medical profession. Section 334.120, RSMo 1969, V.A. M.S. It defies credulity to believe that the legislature intended for a "one commissioner" administrative hearing commission to initially pass upon the fitness or unfitness of persons to practice medicine in this state rather than the combined professional expertise of seven members of the medical profession. Yet, such is the practical result reached by the majority opinion in this case.

What is the significance or meaning of "If at the hearing the applicant shall show *that under the law* he is entitled to examination for licensure . . . the administrative hearing commission shall issue an appropriate order to accomplish such examination . . ."? (Emphasis added.) Before specifically addressing this query, it should be pointed out that Section 161.322, supra, of the Administrative Hearing Commission Act provides that "*The provisions of chapter 536 RSMo* . . . except those provisions . . . which are in conflict with 161.252 to 161.342 . . . *shall apply to and govern the proceedings of the administrative hearing commission and the rights and duties of the parties involved.*" (Emphasis added.) Chapter 536 RSMo, commonly referred to as the Administrative Procedure Act, provides for *judicial review* of final decisions rendered by administrative agencies. Section 161.322, supra, considered in conjunction with Chapter 536 RSMo, is rendered meaningless if Chapter 536 RSMo does not control the *scope of review* possessed by the administrative hearing commission concerning complaints filed before it by a person whom an agency has "refused" to "permit . . . to be examined upon his qualifications for licensure . . .". In cases involving refusal of an agency to permit a person to be examined upon his qualifications for licensure, unlike revocation or suspension of an existing license, which the administrative hearing commission initially hears by virtue of Sections 161.282 and 161.292, supra, the administrative hearing commission is limited to review of the agency's refusal and such review is relegated to whether "under the law" (Section 161.322, supra) the complainant was "entitled to examination for licensure". Paragraph 3 of Section 536.140, RSMo 1969,

V.A.M.S., is of salient importance. It precludes the reviewing body from weighing the evidence if the action of the agency under review involved the exercise of discretion in light of the facts.

Cases are legion in this state, in view of Section 536.140, supra, holding that a body reviewing an administrative decision may not determine the weight of the evidence, *nor substitute its discretion for that of the administrative agency*; and further holding that the function of the reviewing body is to determine primarily whether the decision of the administrative agency was supported by competent and substantial evidence upon the whole record, whether it was arbitrary, capricious, or unreasonable, and whether the administrative agency abused its discretion. Koplar v. State Tax Commission, 321 S.W.2d 686 (Mo.1959); Cupples Hesse Corporation v. State Tax Commission, 329 S.W.2d 696 (Mo.1959); Drey v. State Tax Commission, 345 S.W. 2d 228 (Mo.1961); Gaddy v. State Board of Registration for Healing Arts, 397 S. W.2d 347 (Mo.App.1965); Peck's Products Company v. Bannister, 362 S.W.2d 596 (Mo.1962); Stein v. State Tax Commission, 379 S.W.2d 495 (Mo.1964); and Merritt v. State Hospital No. 1, Fulton, 403 S.W.2d 940 (Mo.App.1966). I fail to see any basis for holding that Section 536.-140, supra, is in any way in conflict with Sections 161.252 to 161.342, supra, so far as the latter apply to refusal of an agency to permit a person to be examined upon his qualifications for licensure as distinguished from revocation or suspension of an existing license. Otherwise, Section 161.322, supra, is barren of all meaning. Nor do I see any basis for any reviewing body to hold that the action of the State Board of Registration for the Healing Arts in this case was arbitrary, capricious or unreasonable, or constituted an abuse of discretion. This is so for the basic and fundamental reason that Section 334.100, supra, statutorily mandates that *"conviction of a felony"* *"shall be deemed unprofessional and dishonorable conduct."* This is so for the

further basic and fundamental reason that Section 334.100, supra, does not say that "conviction of a felony", *absent a showing of rehabilitation,* "shall be deemed unprofessional and dishonorable conduct."

I do not believe that the conclusions I have reached do violence to Section 11 of S.C. S.S.B. 284 (Laws 1965, page 280). The referred to section merely provides "Any provisions of existing statutes pertaining to the administrative agencies listed in section 3 [now Section 161.272, RSMo 1969, V.A.M.S.] *which are in conflict with this act are repealed."* (Emphasis added.) As heretofore pointed out, provisions of Chapter 334 (Physicians and Surgeons) authorizing the State Board of Registration for the Healing Arts to hold hearings concerning revocation or suspension of existing licenses are clearly in conflict with Sections 161.282 and 161.292, supra, of the Administrative Hearing Commission Act. However, original jurisdiction invested in the State Board of Registration for the Healing Arts by Section 334.100, supra, to refuse to licensure persons guilty of dishonorable or unprofessional conduct, is not, in my opinion, in conflict with the Administrative Hearing Commission Act and I find nothing in the latter act evidencing a legislative intent to completely emasculate the State Board of Registration for the Healing Arts regarding this vital function (the net result of the majority opinion). The opening language of Section 161.302 (specifically dealing with jurisdiction of the administrative hearing commission in cases involving original licensure), supra, *"Upon refusal by any agency"* (emphasis added), necessarily presuppose that some initial determination be made by the licensing agency before any jurisdiction attaches to the administrative hearing commission. If the legislature had intended otherwise, it would have been a matter of drafting simplicity to have provided that the State Board of Registration for the Healing Arts was required to submit all requests for initial licensure to the administrative hearing commission and for it to

initially hear and determine such requests as was done in those instances involving suspension or revocation of existing licenses. The referenced language contained in Section 161.302, supra, however, is antithetical to the language contained in Sections 161.282 and 161.292 (restricted to the suspension or revocation of existing licenses), supra, wherein the administrative hearing commission is clearly and unequivocally given original jurisdiction to hear and determine such cases.

The majority opinion notes that the State Board of Registration for the Healing Arts granted Finch a hearing before issuing its order denying him the right to take the examination for licensure prescribed in Section 334.040, supra. At this hearing, Finch introduced evidence of his rehabilitation commensurate with that outlined in the majority opinion. Finch's previous conviction was never disputed and he was fully aware that it was the "roadblock" to his licensure by the board. In my opinion, the Board afforded procedural due process to Finch, particularly so when measured by the standard expressed by Mr. Justice Goldberg (joined by Mr. Justice Brennan and Mr. Justice Stewart) in his concurring opinion in Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (holding that the facts did not measure up to the standard expressed for determining procedural due process) wherein at pp. 107, 108, at p. 1182 of 83 S.Ct., he stated:

"The circumstances will determine the necessary limits and incidents implicit in the concept of a 'fair' hearing. Thus for example, when the derogatory matter appears from information supplied or confirmed by the applicant himself, or is of an undisputed documentary character disclosed to the applicant, and it is plain and uncontradicted that the committee's recommendation against admission is predicated thereon and reasonably supported thereby, then neither the committee's informal procedures, its ultimate recommendations, nor a court ruling sustaining the committee's conclusion may be properly challenged on due process grounds, provided the applicant has been informed of the factual basis of the conclusion and has been afforded an adequate opportunity to reply or explain."

I believe that the State of Missouri can and has mandated qualifications for those desiring to practice the sacred and honorable profession of medicine that transcend even the "loftiest goal(s) of penology". Raymond Bernard Finch's rehabilitation, although standing to enable him to become a useful and productive member of society, does not, per se, eradicate his undisputed "unprofessional and dishonorable conduct", thereby qualifying him to practice the sacred and honorable profession of medicine in this state. The gravity of his crime, when equated with the profession he seeks to practice, compels such a conclusion.

If State ex rel. American Institute of Marketing Systems, Inc. v. Missouri Real Estate Commission, supra, stands for the broad precedent ascribed to it by the majority opinion, then I would respectfully overrule it to that extent for reasons heretofore set forth—and I would reverse the judgment herein and remand the case to the circuit court with instructions to reverse the order of the administrative hearing commission. Any other holding in this case, in my opinion, completely eunuchizes the State Board of Registration for the Healing Arts.