DEPARTMENT OF SOCIAL
SERVICES, Appellant,

v.

John MELLAS, Respondent.

No. WD 66602.

Missouri Court of Appeals,
Western District.

Jan. 23, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 27, 2007.

Application for Transfer Denied
May 29, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., David Patrick Hart, Asst. Atty. Gen., Jefferson City, for Appellant.

John Mellas, St. Louis, pro se.

PAUL M. SPINDEN, Judge.

The Department of Social Services charges the Administrative Hearing Commission with erroneously refusing to defer to the decision of its Division of Medical Services concerning the amount of sanction to impose against John Mellas, a physician who used the wrong code to bill for his Medicaid services.[1] We concur with the commission that it may make the decision that the department should have made and was not obligated to defer to the department's original ruling so long as the commission's decision was lawful and rested on a sound factual basis. Because the errors in Mellas' Medicaid billings resulted not from his billing practices but from the department's own internal problems, we affirm the circuit court's judgment to affirm the commission's decision.

■ In considering the department's appeal, we review the commission's decision and not the circuit court's judgment. *Missouri Department of Social Services, Division of Medical Services v. Great Plains Hospital, Inc.*, 930 S.W.2d 429, 433 (Mo.App.1996). We review the commission's findings of fact and conclusions of law by determining whether or not substantial and competent evidence supported the decision, whether or not the decision was arbitrary, capricious, or unreasonable, and whether or not the commission abused its discretion. *Gee v. Department of Social Services, Family Support Division*, 189 S.W.3d 621, 623 (Mo.App.2006).

1. The department was seeking only to recoup the amount of overages paid to Mellas, but it deems that to be a sanction.

Mellas acknowledged that he used the wrong code in billing for his services to Medicaid patients from 1993 to 2003. As a result, he received approximately 350 percent more than he should have. Mellas used the correct code on his billings until the department rejected them. The department would accept only billings on which Mellas used the wrong code. For 10 years, the department paid him for billings using the wrong code and did not notify him of any problems with his billings.

The department's regulations impose a three-year limitation on obtaining reimbursement for over payments. After discovering the error, the department sought to sanction Mellas by recouping almost $18,000 in over payments from him for the three years for which it could seek reimbursement. Mellas asked the commission to review the matter.

The commission found that, from May 2000 to May 2003, Mellas received $17,842.50 more than he should have as a result of his using the wrong billing code. The commission decided, however, that Mellas should not have to repay the entire amount of the over payments. It reasoned that, because Mellas began using the incorrect code only after the department rejected his claims and his assistant consulted with the department concerning the proper code to use, Mellas should have to repay only 60 percent of the over payment—the amount that the department must reimburse the federal government for the over payment. Concerning the advice received by Mellas' assistant from the department, the commission made these findings of fact:

... When the Medicaid code numbers changed in 1993, Mellas' employee, Susan Buckles, tried to use the monthly code to bill for a month of service, and the claims were rejected. Buckles called the Department to question the rejection. Based upon and following that call, she resubmitted the claims using the individual code for 30 days, and the claims were accepted. She continued to bill this way for ten years without having any of the claims rejected for this reason.

The department's auditor testified that she discovered that 32 physicians, including Mellas, were using the wrong billing code.

In complaining about the commission's reducing the amount that Mellas has to pay back to the state by 40 percent, the department asserts that the commission did not satisfy the requirements of Regulation 13 CSR 70–3.030(5)(A)5. This regulation says, "In cases where sanctions are being considered *for billing deficiencies only,* the Medicaid agency may mitigate its sanction if it determines that prior provider education was not provided." [2] In explaining why it believed that its decision satisfied 13 CSR 70–3.030(5)(A)5, the commission said that the department "was giving out the wrong provider education, and that Mellas and approximately 31 other nephrologists in the state were following that incorrect procedure. The Department's education efforts were worse than no information, and the Department's billing system and historic practices reinforced what the doctors were doing." [3]

The department's reliance on Regulation 3.030(5)(A)5 is misplaced. The regulation is not pertinent to this case. The problem with Mellas' billings did not emanate from

**2.** We added the emphasis.

**3.** Actually, the evidence indicated that 32 urologists and nephrologists, including Mellas, were using the wrong code. The department lumped the two medical specialties together in its records and treated their claims for Medicaid reimbursement together.

a lack of provider education. The department's educational efforts were sufficient enough to inform Mellas of the new code. His assistant used the new code when it went into effect on January 1, 1993. The assistant testified that twice the department rejected Mellas' claims although they contained the correct code.

Hence, Mellas' case was not an issue of "billing deficiencies"—certainly not an issue of "billing deficiencies only," as required by the regulation. The problem did not emanate from billing deficiencies. Indeed, Mellas' initial billings contained the correct code. Instead of being a problem caused by Mellas, it was a problem caused by the department. Whether because of a lack of communication or proper training, the department's personnel would accept only billings that had the wrong code. The department's obvious message to Mellas was that, if he wanted to get paid, he had to use the wrong code. Obviously, Mellas was not volunteering his time gratis and expected to get paid. Hence, he did what the department required of him to get his payment; he used the wrong code. That the department wanted to sanction him for not insisting on using the right code and risk not getting paid at all is untenable. If this were a criminal case, we would consider the department's action to be entrapment.

Although subsection 5 of Regulation 3.030(5)(A) is not applicable to this case, the commission still had authority to mitigate. Regulation 3.030(5)(A) says, "The decision of the sanction to be imposed shall be at the discretion of the Medicaid agency." [4] The subparts of Regulation 3.030(5)(A), including subsection 5, consist of "factors [to] be considered in determining the sanction(s) to be imposed." These factors do not comprise the only factors that may be considered in determining the sanctions to impose. That Mellas' mistake was entirely the result of the department's internal problems seems to be a sound basis for mitigation, as the commission perceived.[5]

The department complains of the commission's seeming heavy reliance on testimony by Mellas' assistant that she telephoned the department after she submitted billings using the correct code and the department rejected them. The commission emphasized the telephone call as its basis for concluding that the department caused the problem by giving the assistant bad advice. In its findings of fact, the commission said in a footnote:

As a result of our ruling on the Department's hearsay objection [in which we sustained the Department's objection to what an unidentified person at the Department told Buckles], the record does not contain admissible evidence of the substance of that telephone instruction. Our finding is based upon what Buckles understood and the subsequent conduct of the Department rather than upon the actual instruction that may have been spoken that day. The finding is further supported by the number of physicians who also billed this way.

The department's complaint is valid. The commission disingenuously sustained the department's objection but still used the telephone call as the basis for concluding that the department provided incorrect billing advice to Mellas' assistant. From

---

4. The department's Division of Medical Services is the "Medicaid agency."

5. Mellas did not cross-appeal the commission's decision to complain of being ordered to repay 60 percent of the over payments. We, therefore, have no authority to consider the obvious issue of whether or not he should be sanctioned in any amount.

the assistant's actions after the telephone call, the commission made assumptions about what the department had told her. Hence, the commission did the very thing that it claimed that it was not doing—relied on hearsay. Moreover, it relied on what it surmised the substance of the telephone conversation to have been. The commission's assumptions made no allowance for the possibility that Mellas' assistant misunderstood what she was being told or that she spoke to someone who was not authorized to be fielding such queries.

Nonetheless, the commission's improper focus on the telephone conversation is inconsequential in light of the clear evidence that, indeed, Mellas' problems with billing resulted from the department's mishandling of his billings—its paying only the bills that used the wrong code. The telephone conversation was only a minor incident. Its only significance was to pinpoint when Mellas' assistant decided to try using the wrong code. Because reliance on the telephone conversation is not necessary to affirm the commission's decision, we need not further address the department's complaints concerning it.

After rejecting Mellas' billings with the correct code and accepting only those with the incorrect code, the department's decision to recoup over payments from him was arbitrary and capricious. We are not suggesting that mere inadvertence constitutes arbitrary and capricious action. Indeed, the law makes allowances for a governmental agency's mistakes—even its mistaken advice. A governmental officer's misinterpretation of the law does not afford those dealing with the officer any relief, through estoppel or otherwise. *State ex rel. Johnson v. Leggett,* 359 S.W.2d 790, 799 (Mo.1962) (attorney contracting with superintendent of insurance could not recover for breach of contract because superintendent lacked authority to enter into contract); *St. Francois County v. Brookshire,* 302 S.W.2d 1, 4–5 (Mo.1957) (mistaken belief of court personnel that they could pay attorneys for representing them as individuals insufficient to allow attorneys to retain such funds). But the department's actions rose above mere inadvertence. By paying Mellas and other physicians only when they used the wrong code, the department acted arbitrarily and capriciously. It exacerbated the problem by attempting to shift responsibility for its wrongful actions from itself to Mellas and the other physicians. The commission properly decided to mitigate sanctions against Mellas.

■ The department argues that the commission should have deferred to it because it had specialized knowledge and was better equipped to determine the gravity of the infractions. The department's assertion that the commission was obligated to defer to it is incorrect. To the extent that the department is in a better position to determine the gravity of the infractions, its obligation under the scheme for the commission's review devised by the General Assembly is to share its insights with the commission and to persuade the commission of the soundness of its policy.

In Section 621.055, RSMo 2000, the General Assembly mandated that the commission have the power to review the department's decision. In fulfilling this role, the commission's decision becomes the decision of the department. *Geriatric Nursing Facility, Inc. v. Department of Social Services,* 693 S.W.2d 206, 210 (Mo.App.1985) (circuit court had subject matter jurisdiction over petition to review decision of Department of Social Services as "adjusted" by Administrative Hearing Commission). "The [commission's] function is to render the administrative decision of the agency." *Department of Social Services v. Administrative Hearing Commission,* 826

S.W.2d 871, 874 (Mo.App.1992). The commission actually steps into the department's shoes and becomes the department in remaking the department's decision. This includes the exercise of any discretion that the department would exercise. *State Board of Registration for the Healing Arts v. Finch,* 514 S.W.2d 608, 614 (Mo.App. 1974).

Mellas' case makes obvious the need for the commission's independent, impartial review. The department insists that Mellas alone caused the problems with his billings. It seemingly is unaware that it, not Mellas, was the primary cause. As an independent, objective reviewer of the department's actions, the commission plays a key role in helping Missouri constituents contend with an administrative agency that can be blind to its own faults.

The department counters that *Finch,* cited *supra,* does not apply because "it arose under a different statute granting broader reviewing authority to the Commission, whereas the Commission's jurisdiction in this matter set forth in RSMo Section 621.055 states only that the Commission will 'review' the decision." The department is wrong. The disputes in *Finch* and in this case are governed by the procedures as set forth in Chapter 536. The commission's authority in *Finch,* even arising under a different statute, is the same as the commission's authority to hear the present case.

In its final point on appeal, the department avers that the commission erred in not accepting the department's stipulation that the amount of Mellas' over payment should be reduced by $1305. The point is without merit. The commission ordered, *"To the extent it has not already done so,* the Department may recoup 60% of [$17,-842.50] or $10,705.50." [6] If Mellas has paid $1305, the commission's order allows it to collect the balance without regard to the validity of its stipulation.

We therefore affirm the circuit court's judgment to affirm the commission's decision.

RONALD R. HOLLIGER, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.