**STATE BOARD OF REGISTRATION FOR THE HEALING ARTS,**
Appellant,

v.

**Christine A. TRUEBLOOD, M.D., Respondent.**

No. WD 73875.

Missouri Court of Appeals, Western District.

April 3, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2012.

Application for Transfer Denied July 3, 2012.

Glenn E. Bradford and Robert G. Groves, Kansas City, MO, for appellant.

Nicole L. Sublett, Jefferson City, MO, for respondent.

Before: ALOK AHUJA, P.J., and THOMAS H. NEWTON and JAMES E. WELSH, JJ.

ALOK AHUJA, Judge.

Christine Trueblood applied for licensure as a physician in Missouri in 2009. The Board of Registration for the Healing Arts granted her a license, but placed it under probation for a period of five years. Trueblood filed a complaint with the Administrative Hearing Commission (the "AHC" or "Commission"), seeking review of the Board's decision. Following an evidentiary hearing, the AHC modified the terms of Trueblood's license by reducing the period of probation to fifteen months, which Trueblood had served by the time of the AHC's decision. The Board then petitioned for judicial review before the Circuit Court of Cole County. The circuit court affirmed the AHC's decision. The Board now appeals to this Court, arguing that the AHC failed to give appropriate deference to the Board's decision, and that the Board had legal cause to require five years' probation. We affirm.

## Factual Background

Trueblood entered medical school in 1998. Prior to entering medical school, Trueblood had been in an automobile accident. She experienced continuing knee pain as a result of injuries sustained in the accident, and was prescribed opiate painkillers, which she took for a number of years.

Trueblood graduated from medical school in 2002, and began a residency program in psychiatry at the University of Kansas Medical Center in July of that year. Shortly after beginning her residency, Trueblood obtained a Drug Enforcement Administration ("DEA") license. In approximately October 2002, Trueblood began using her DEA license to write false prescriptions for controlled substances for herself. Over the course of the next several years, Trueblood confessed her substance abuse, was placed on medical leave from her residency program, participated in a drug rehabilitation program, resumed her residency program, and relapsed into drug use. Following her relapse, Trueblood claimed that she was taking up to 60 Percocet tablets daily, which she acquired by writing daily prescriptions and filling them "in pharmacies all over the city."

Trueblood was arrested at a Costco store on November 9, 2006, while trying to fill a prescription. She surrendered her

DEA license that night, and was charged with writing false prescriptions and identity theft. She was also placed on administrative leave from her residency program. Trueblood completed further drug rehabilitation programs, as well as a diversion program through the state court, and in 2008 was given permission to complete her residency program by the Kansas State Board for the Healing Arts. She completed her psychiatry residency on October 19, 2008.

Trueblood submitted an application for licensure as a physician in Missouri on March 3, 2009. On May 11, 2009, the Board issued its Order granting her a license subject to a five-year probationary period.

Trueblood sought review before the AHC. A contested-case hearing was held before a Commissioner on June 16, 2010. At the hearing both the Board and Trueblood were represented by counsel, and presented evidence. The AHC issued its Decision on August 11, 2010. The Commissioner agreed with the Board that cause existed to issue Trueblood a probated license, but modified Trueblood's license by reducing the period of probation from five years to fifteen months. Given the time that had passed since the Board's decision, Trueblood's license was unrestricted as of the date of the AHC's Decision. In her sixteen-page Decision, the Commissioner cited evidence of Trueblood's continuous and verified sobriety since November 2006; her continuing participation in therapy and self-help groups; her agreements with the Kansas Medical Advocacy Program ("KMAP") and the Missouri Physicians Health Program ("MPHP"), both of which monitor Trueblood's participation in substance-abuse prevention and drug-testing programs; her candid testimony concerning her past drug abuse and her commitment to her sobriety; and the "enthusiastic and unequivocal" testimony offered by Trueblood's witnesses, including her therapist and representatives from both KMAP and MPHP.

The Board filed its petition for judicial review in the Circuit Court of Cole County on September 1, 2010. On April 4, 2011, the circuit court entered its judgment affirming the decision of the AHC. The Board then appealed to this Court.

## Standard of Review

▇▇▇ On appeal from the circuit court's review of an agency decision, this Court reviews the action of the agency, not the action of the circuit court.

. . . .

The correct standard of review for administrative decisions governed by article V, section 18 of the Missouri Constitution—which includes healings arts cases—is "whether, considering the whole record, there is sufficient competent and substantial evidence to support the [agency's decision]. This standard would not be met in the rare case when the [agency's decision] is contrary to the overwhelming weight of the evidence." When the agency's decision involves a question of law, the court reviews the question *de novo*.

*Albanna v. State Bd. of Regis. for the Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009) (citations and footnote omitted).

## Analysis

The Board challenges the AHCs decision on two grounds. First, it contends that the AHC erred by conducting a *de novo* review of the Boards decision, rather than a more deferential review under which the Boards Order could only be modified if the Board had abused its discretion, or its decision was arbitrary, capricious, unreasonable, or unlawful. Second,

the Board claims that it had good cause to grant Trueblood a probated license given her past drug use and deception. We find neither argument persuasive.

### I.

■ The Board first argues that the AHC erred by failing to give due deference to the Board's decision to grant Trueblood a license probated for five years. According to the Board, pursuant to §§ 536.140–.150,[1] the AHC can modify a Board decision only when that decision is an abuse of discretion or otherwise arbitrary, capricious, unreasonable or unlawful. We disagree.

### A.

The AHC's review of the Board's decision is governed by statutory provisions found in multiple chapters of Missouri's Revised Statutes.

The Board of Registration for the Healing Arts falls within the Division of Professional Registration of the Department of Insurance, Financial Institutions and Professional Registration. §§ 324.001.2, .11(1). Section 324.038 (formerly § 620.149, RSMo 2000) authorizes Boards within the Division of Professional Registration to issue probationary licenses in specified circumstances:

1. Whenever a board within or assigned to the division of professional registration ... may refuse to issue a license for reasons which also serve as a basis for filing a complaint with the administrative hearing commission seeking disciplinary action against a holder of a license, the board, as an alternative to refusing to issue a license, may, at its discretion, issue to an applicant a license subject to probation.

2. The board shall notify the applicant in writing of the terms of the probation imposed, the basis therefor, and the date such action shall become effective. The notice shall also advise the applicant of the right to a hearing before the administrative hearing commission, if the applicant files a complaint with the administrative hearing commission within thirty days of the date of delivery or mailing by certified mail of written notice of the probation. If the board issues a probated license, the applicant may file, within thirty days of the date of delivery or mailing by certified mail of written notice of the probation, a written complaint with the administrative hearing commission seeking review of the board's determination. Such complaint shall set forth that the applicant or licensee is qualified for nonprobated licensure pursuant to the laws and administrative regulations relating to his or her profession. Upon receipt of such complaint the administrative hearing commission shall cause a copy of such complaint to be served upon the board by certified mail or by delivery of such copy to the office of the board, together with a notice of the place of and the date upon which the hearing on such complaint will be held. Hearings shall be held pursuant to chapter 621, RSMo. The burden shall be on the board. to demonstrate the existence of the basis for imposing probation on the licensee. If no written request for a hearing is received by the administrative hearing commission within the thirty-day period, the right to seek review of the board's decision shall be considered waived.

Chapter 334, which governs the Board of Registration for the Healing Arts specif-

---

1. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated by the 2011 Cumulative Supplement.

ically, contains a similar provision authorizing the issuance of a probated license.

The board may refuse to issue or renew any certificate of registration or authority, permit or license required pursuant to this chapter for one or any combination of causes stated in subsection 2 of this section. The board shall notify the applicant in writing of the reasons for the refusal and shall advise the applicant of the applicant's right to file a complaint with the administrative hearing commission as provided by chapter 621. As an alternative to a refusal to issue or renew any certificate, registration or authority, the board may, at its discretion, issue a license which is subject to probation, restriction or limitation to an applicant for licensure for any one or any combination of causes stated in subsection 2 of this section. The board's order of probation, limitation or restriction shall contain a statement of the discipline imposed, the basis therefor, the date such action shall become effective, and a statement that the applicant has thirty days to request in writing a hearing before the administrative hearing commission. If the board issues a probationary, limited or restricted license to an applicant for licensure, either party may file a written petition with the administrative hearing commission within thirty days of the effective date of the probationary, limited or restricted license seeking review of the board's determination. If no written request for a hearing is received by the administrative hearing commission within the thirty-day period, the right to seek review of the board's decision shall be considered as waived.

§ 334.100.1.

Here, the AHC found that the Board had properly pled, and proved, that Trueblood's license was subject to probation based on three of the grounds listed in § 334.100.2. Specifically, the AHC found that a probated license was justified under § 334.100.2(4)(g), based on "[f]inal disciplinary action by any . . . licensed hospital or medical staff of such hospital in this or any other state," because Trueblood was twice suspended from her residency program at the University of Kansas Medical Center. The AHC also found that the Board had established that Trueblood's license was subject to probation under § 334.100.2(4)(h), for "prescribing . . . any drug [or] controlled substance . . . for other than medically accepted therapeutic . . . purposes," based on her admission that "she wrote prescriptions for herself to feed her addiction to opiates." Finally, the Commission agreed that probation was justified under § 334.100.2(13), for Trueblood's "[v]iolation of the drug laws or rules and regulations of this state, . . . any other state, or the federal government."

The AHC's authority to review the Board's decision in this case is set forth in § 621.045.1, which provides:

The administrative hearing commission shall conduct hearings and make findings of fact and conclusions of law in those cases when, under the law, a license issued by any of the following agencies may be revoked or suspended or when the licensee may be placed on probation or when an agency refuses to permit an applicant to be examined upon his or her qualifications or refuses to issue or renew a license of an applicant who has passed an examination for licensure or who possesses the qualifications for licensure without examination:

. . . .

Board of Registration for the Healing Arts

Section 621.135 provides that

The provisions of chapter 536, RSMo, and any amendments thereto, except

those provisions or amendments which are in conflict with sections 621.015 to 621.198, ... shall apply to and govern the proceedings of the administrative hearing commission and the rights and duties of the parties involved.

## B.

The AHC's Decision asserts the right to review the Board's decision to issue Trueblood a probated license *de novo*, without deference to the Board's decision:

> We have jurisdiction to hear Trueblood's complaint because she seeks our review of the decision to issue a probated license. The Board has the burden to prove the basis for imposing probation. We exercise the same authority that has been granted to the Board. Therefore, we simply decide the application *de novo*.

The Board argues that the Commission is required to defer to the Board's licensing decision, and that it may only reject the Board's decision if that decision is unlawful, unreasonable, arbitrary, capricious, or an abuse of discretion. To the contrary, however, the AHC's assertion of a right to conduct *de novo* review is supported by multiple prior decisions of this Court.

Thus, in *State Board of Registration for the Healing Arts v. Finch,* 514 S.W.2d 608 (Mo.App.1974), the AHC ordered that a physician be permitted to take a medical licensing examination despite his earlier conviction of first-degree murder, after the Board refused to allow the physician to take the examination. As in this case, [t]he Boards principal argument in [*Finch* was] that the evaluation of Dr. Finchs past

conduct and of his present moral character was a matter to be decided in the discretion of the Board. *Id.* at 612. The plurality opinion in *Finch* rejected this argument, in light of the authority granted to the AHC under the Administrative Hearing Commission Act enacted in 1965 (now chapter 621). In *Finch,* the Board acknowledged that the AHC was entitled to independently determine the relevant facts; the plurality held that the AHCs conceded fact-finding role could not be divorced from the discretionary decision as to whether an applicant should be barred from licensure. *Id.* at 613–15. The Court concluded:

> [T]he Administrative Hearing Commission Act vested authority in the Commission to find the facts with respect to the seriousness of Dr. Finch's original felonious conduct, the extent to which he has repented and rehabilitated himself and all other factors bearing on whether he should be eligible for licensing. The Act further authorized the Commission to make conclusions of law (based on the facts found) as to whether Dr. Finch should be considered an eligible candidate. These powers conferred upon the Commission are inconsistent with the retention of a controlling discretion in the latter regard by the Board, and the original primacy granted to the Board in this regard must therefore be held to have been repealed by Section 11 of the Administrative Hearing Commission Act.

*Id.* at 615.[2]

We reaffirmed the holding of *Finch* in *State Board of Registration for the Heal-*

---

**2.** The plurality opinion in *Finch* was joined by three members of the six-judge court which decided the case. Judge Pritchard, joined by Judge Swofford, filed a concurring opinion which suggests that the AHC, and

any subsequent reviewing court, was limited to determining whether *the Board* had abused its discretion, based on the record developed before, and the facts found by, the Commission. 514 S.W.2d at 617–19. While Judge

*ing Arts v. DeVore*, 517 S.W.2d 480 (Mo. App.1974), in which the Board once again argued that "it has the sole discretion to refuse to grant licensure" based on an applicant's prior dishonorable conduct and felony conviction. *Id.* at 484. As in *Finch*, we rejected this argument:

> [T]he Act does not deny the Board the initial authority ... to deny an application for license by an individual the Board believes to be of bad moral character or by a person admittedly guilty of past unprofessional or dishonorable conduct including conviction of a felony or any one or more of the eleven specified acts, practices or habits proscribed by s 334.100. This initial authority to deny obviously involves and requires the exercise of discretion. But if the Board determines to deny an application for licensure then, upon complaint of the applicant, the Act authorizes and directs the Administrative Hearing Commission to conduct a hearing on the qualifications of the applicant and make its findings of fact and conclusions of law on the issues of whether the applicant is entitled to examination for licensure, or licensure, as the case may be.

*Id.* at 485.

More recently, in *Department of Social Services v. Mellas*, 220 S.W.3d 778 (Mo. App. W.D.2007), the Department of Social Services ("DSS") argued that the Commission should have deferred to it with regard to the seriousness of the infractions committed by a physician who used the wrong billing codes in seeking reimbursement under the Medicaid program. Following *Finch*, we rejected the argument that the AHC was required to defer to the DSS' initial administrative decision:

> The department argues that the commission should have deferred to it because it had specialized knowledge and was better equipped to determine the gravity of the infractions. The department's assertion that the commission was obligated to defer to it is incorrect. To the extent that the department is in a better position to determine the gravity of the infractions, its obligation under the scheme for the commission's review devised by the General Assembly is to share its insights with the commission and to persuade the commission of the soundness of its policy.

> In Section 621.055, RSMo 2000,[3] the General Assembly mandated that the commission have the power to review the department's decision. In fulfilling this role, the commission's decision becomes the decision of the department. "The [commission's] function is to render the administrative decision of the agency." *The commission actually steps into the department's shoes and becomes the department in remaking*

Pritchard's concurring opinion arguably supports the Board's position, as we explain in the text it is the plurality opinion which has been followed in later cases.

3. Section 621.055, like § 621.045, provides that "[a]ny person authorized pursuant to section 208.153, RSMo, to provide services for which benefit payments are authorized pursuant to section 208.152, RSMo, may seek review by the administrative hearing commission of any of the actions of the department of social services specified in subsection 2, 3, 4 or 5 of section 208.156, RSMo. The review

may be instituted by the filing of a petition with the administrative hearing commission. The procedures applicable to the processing of such review shall be those established by chapter 536, RSMo." *Mellas* rejected DSS' argument that *Finch* was distinguishable because it arose under a different statute: "[t]he commission's authority in *Finch*, even arising under a different statute, is the same as the commission's authority to hear the present case." 220 S.W.3d at 783. By the same token, we conclude that *Mellas* is fully applicable in this case.

*the department's decision. This includes the exercise of any discretion that the department would exercise. State Board of Registration for the Healing Arts v. Finch,* 514 S.W.2d 608, 614 (Mo.App.1974).

220 S.W.3d at 782–83 (emphasis added; other citations omitted). This discussion was followed in *Department of Social Services v. Senior Citizens Nursing Home District of Ray County,* 224 S.W.3d 1, 15–16 (Mo.App. W.D.2007). *See also Mo. Dep't of Soc. Servs. v. Admin. Hrg. Comm'n,* 826 S.W.2d 871, 874 (Mo.App. W.D.1992) ("In reviewing the DSS decision, the AHC is performing an administrative review. The AHC 'simply determines on evidence heard, the administrative decision of the agency involved.' The decision of the AHC then becomes the decision of the department. This is not a reconsideration of the [issue decided by the DSS] analogous to a judicial review wherein the record is scrutinized for legal error." (citations omitted)).

Finally, in *Missouri Real Estate Appraisers Commission v. Funk,* 306 S.W.3d 101 (Mo.App. W.D.2010), we reiterated the Commission's original discretion, in a case involving the Real Estate Appraisers Com-

mission's refusal to issue an applicant a general real estate appraiser certification:

Though the issue of whether Funk demonstrated competence and knowledge in his commercial appraisals was the rationale for the denial of his general real estate appraiser's certification by the MREAC, the scope of the AHC's hearing was not restricted to this issue. Instead, *the AHC was entitled to conduct a fresh inquiry into whether Funk was deserving of certification,* based upon the entire record of relevant admitted evidence pertaining to certification. Thus, the inquiry of the AHC was whether, at the time of the AHC hearing, Funk met the requirements for general real estate appraisal certification as outlined in sections 339.511.3 and 339.535.

*Id.* at 105 (emphasis added; citation and footnotes omitted).

Consistent with the cases discussed above, other decisions, issued in a variety of contexts, recognize that the function of the AHC in administrative review proceedings is to render the agency's final decision, exercising the same authority as the underlying agency.[4]

4. *See, e.g., Custom Hardware Eng'g & Consulting, Inc. v. Dir. of Revenue,* 358 S.W.3d 54, 58 (Mo. banc 2012) ("Because the AHC announces the agency decision, the AHC does not exceed its authority by increasing the director [of revenue]'s [tax deficiency] assessment."); *Dep't of Soc. Servs. v. Little Hills Healthcare, L.L.C.,* 236 S.W.3d 637, 644 (Mo. banc 2007) (rejecting argument of Division of Medical Services "that the Commission erred in awarding Hospital additional monies because it should have deferred to DMS's calculations," with the observation that "[t]he legislature's intent was for the Commission to render the agency's decision"); *Whitehead v. Dir. of Revenue,* 962 S.W.2d 884, 885 (Mo. banc 1998) ("In [tax] deficiency proceedings the AHC's jurisdiction is *de novo,* even to the extent the AHC may change the director's assessment on grounds not previously raised

by either the taxpayer in a protest or by the director in a deficiency notice."); *J.C. Nichols Co. v. Dir. of Revenue,* 796 S.W.2d 16, 20–21 (Mo. banc 1990) ("Because the Commission announces the decision of the agency, the Commission's decision in this case to adjust the Director's [tax deficiency] assessment is within the authority of the Commission. It is within the authority of the Commission because it is within the authority of the agency."); *Mo. Ethics Comm'n v. Wilson,* 957 S.W.2d 794, 798 (Mo.App. W.D.1997) ("The function intended by the legislature for the AHC is to render, on the evidence heard, the administrative decision of the agency. The decision of the AHC then becomes the decision of the department." (citations omitted)); *Monroe Cnty. Nursing Home Dist. v. Dep't of Soc. Servs.,* 884 S.W.2d 291, 293 (Mo.App.

While §§ 324.038 and 334.100 may have given the Board the *original* discretion to decide whether to impose probation on Trueblood's license, and to establish the terms of that probation, once an application for review was filed, the decision became one for the AHC. In making its decision, the AHC properly exercised the full measure of discretion initially vested in the Board, without deference to the Board's decision.

## C.

Against the substantial body of caselaw discussed above, the Board argues that the AHC's assertion of *de novo* review overstates the AHC's authority, because a more deferential standard of review is specified in provisions of the Missouri Administrative Procedure Act (the "MAPA"), §§ 536.140 and 536.150. However, those statutes address *judicial* review, by *a court*, of final agency action; they do not govern the relationship between the Commission and the Board. Section 536.140 provides that *"[t]he court shall hear the case without a jury,"* § 536.140.1 (emphasis added), and specifies "[t]he scope of *judicial review* in all contested cases." § 586.140.2 (emphasis added). Similarly, § 536.150.1 specifies that, where "there is no other provision for *judicial* inquiry," "such decision may be reviewed by suit for injunction" (emphasis added); like § 536.140, § 536.150 repeatedly refers to the exercise of review by "the court." These provisions cannot apply to the AHC, because "[t]he AHC is not a court," and

cannot perform *judicial* review because "[j]udicial review ... is a purely judicial function" which "the constitution vests exclusively in the courts." *Lederer v. Dep't of Soc. Servs.*, 825 S.W.2d 858, 862, 863 (Mo.App. W.D.1992).

The Board argues that, unless §§ 536.140 and .150 supply the standard of review to be applied by the AHC in cases like this one, the reference to "[t]he provisions of chapter 536" in § 621.135 would be meaningless. What the Board ignores, however, is that the MAPA does not merely address judicial review of agency decisions; it also contains multiple provisions for the conduct of contested-case hearings by administrative agencies themselves. *See generally* §§ 536.063–.090. It is *those* provisions which apply to the AHC's review of decisions like the present one, not §§ 536.140 or .150. *Lederer*, 825 S.W.2d at 864.

In *Lederer*, the AHC did what the Board argues it should have done in this case: it reviewed a decision of the Personnel Advisory Board " 'on the whole record' under the standards of § 536.140.2." *Id.* at 862.[5] As noted above, however, this Court held in *Lederer* that the AHC could not exercise judicial review under § 536.140, but was instead required to conduct a hearing under the MAPA's contested-case procedures. *Id.* at 864. The Board's argument concerning §§ 536.140 and .150 is directly contrary to our decision in *Lederer*.[6]

We recognize that, in the case of discipline imposed upon an *existing* license, the

---

E.D.1994) ("Although the AHC steps into the shoes of the DMS when reviewing appeals from its decisions, AHC is only authorized to exercise the agency's adjudicative authority, not its rulemaking authority.").

**5.** The AHC's decision in *Lederer* was issued by Commissioner Paul Spinden, later a judge of this Court, and the author of this Court's decision in *Mellas*, 220 S.W.3d 778.

**6.** In *Asbury v. Lombardi*, 846 S.W.2d 196 (Mo. banc 1993), the Missouri Supreme Court rejected *Lederer's* construction of § 36.390.9, RSMo 1986, and instead held § 39.390.9 to be unconstitutional in certain respects. *Id.* at 201, 201 n. 8. *Lederer's* general discussion of the nature of, and differences between, administrative and judicial review remains good law, however; the Supreme Court has continued to cite this discussion post-*Asbury*. *See State ex rel. Hilburn v. Staeden*, 91 S.W.3d

relevant statutes establish a bifurcated procedure, under which the AHC finds the predicate facts as to whether cause exists to discipline a license, and the Board then exercises final decisionmaking authority concerning the discipline to be imposed. *See* §§ 334.100.4, 621.110; *Tendai v. Bd. of Regis. for the Healing Arts*, 161 S.W.3d 358, 364–65 (Mo. banc 2005).[7] Sections 324.038 and 334.100 contain no similar bifurcated procedure with respect to new or renewal licenses, however, even though the decision to probate a new license is based upon the same grounds (found in § 334.100.2) which can justify disciplining an existing license. The fact that the legislature explicitly preserved the Board's ultimate discretionary authority with respect to the discipline of existing licenses, but failed to include similar provisions in connection with the imposition of probation on new licenses, confirms that the Board's discretionary authority was not similarly retained in this context. *See Finch*, 514 S.W.2d at 615 ("it should be pointed out that in the case of license revocations, the legislature purposefully and distinctly set forth a precise division of functions, leaving no room for doubt or speculation as to the legislative intention. No similar division of functions has been specified with respect to original licensure covered by § 161.302[, RSMo 1969, now § 621.120]").

## II.

In its second Point, the Board contends that the AHC erred by ordering that Trueblood be issued an unrestricted license as of the date of the AHC's decision, "because the Board had legal cause to grant [Trueblood] only a probated license to practice medicine."

The Board's Point Relied On is misdirected, in two respects. First, based on our discussion in § I, above, the issue here is not whether *the Board* had sufficient cause to take the action it took, but instead whether *the AHC* could properly limit Trueblood's probation to the period prior to its decision. It is the AHC's Decision which is under review here, not the Board's. *See Molder v. Mo. State Treasurer*, 342 S.W.3d 406, 409–11 (Mo.App. W.D.2011). Second, as discussed in § I.A, above, the AHC *agreed* with the Board that "legal cause [existed] to grant [Trueblood] only a probated license," based on the grounds specified in §§ 334.100.2(g), (4)(h), and (13). The point of disagreement is not whether grounds existed to probate Trueblood's license, but instead the *duration* of that probation.

■ Viewed from the proper perspective, we conclude that sufficient competent evidence supports the AHC's Decision, and that the Decision is not contrary to the overwhelming weight of the evidence. As we described above, the AHC's decision cites to substantial evidence of Trueblood's rehabilitation: her continuous—and verified—sobriety for almost four years as of the date of the AHC's decision; her candid and credible testimony acknowledging her past misconduct and explaining the actions she had taken to prevent its recurrence; the testimony of other mental-health and substance-abuse professionals as to Trueblood's rehabilitation and prospects for the future; and the mechanisms in place, through Trueblood's agreements with KMAP and MPHP, to monitor her continued compliance with her recovery program, and to alert the Board in the event that Trueblood should relapse. The Board argues that the mechanisms in place are

607, 612 (Mo. banc 2002); *Murray v. Mo. Hwy. & Transp. Comm'n*, 37 S.W.3d 228, 234 (Mo. banc 2001); *Chastain v. Chastain*, 932 S.W.2d 396, 399 n. 15 (Mo. banc 1996).

7. Overruled on other grounds, *Albanna v. Bd. of Regis. for the Healing Arts*, 293 S.W.3d 423, 428 n. 2 (Mo. banc 2009).

insufficient to protect the public. On the contrary, there was plainly a sufficient evidentiary basis in the record for the AHC to conclude that, given Trueblood's prior recovery efforts, the mechanisms in place to assure her future sobriety were adequately protective. Although the Board argues that the AHC erroneously relied on Trueblood's interest in earning an income, and allowed her pecuniary interests to override the interests of the public, the Decision only refers to Trueblood's need to maintain gainful employment in response to the Board's argument that her adoption of a "new moral code" was not sincere, but was economically motivated. Nothing in the Commission's decision suggests that it allowed the protection of the public to be superseded by other considerations.

### Conclusion

We affirm the circuit court's judgment, which affirmed the August 11, 2010 Decision of the Administrative Hearing Commission.

All concur.