

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| GREGORY STIENS, | ) | |
| | ) | **WD82219** |
| Appellant, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | **September 17, 2019** |
| AGRICULTURE, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Nodaway County, Missouri**
**Honorable Joel Andrew Miller, Judge**

**Before Division Two:**
**Lisa White Hardwick, P.J., Thomas H. Newton, and Mark D. Pfeiffer, JJ.**

Mr. Gregory Stiens appeals *pro se* a Nodaway County Circuit Court judgment affirming a summary decision by the Administrative Hearing Commission (AHC) in favor of the Missouri Department of Agriculture (MDA). Mr. Stiens filed a complaint with the AHC after being terminated from employment by the MDA. He challenges as clear error the summary decision on three points: (1) the MDA's Human Resources (HR) director's authority to terminate him, (2) genuine issues of fact remained in dispute, and (3) two affidavits submitted in support of the MDA's motion for summary decision should have been stricken. We reverse and remand for further proceedings.

**Factual and Procedural Background**

The MDA is a state agency that derives its authority from chapter 261 of the Missouri Statutes.[1] Section 261.040 grants authority to the MDA director "…to discharge any employee of the state department of agriculture." Mr. Stiens was employed by the MDA for seventeen years before he was terminated in 2017 by the Human Resources (HR) director. In 2015 and 2016, Supervisor Leroy Raymond conducted Mr. Stiens's performance appraisals. The 2016 performance appraisal indicated that Mr. Stiens needed improvement, and consequently he was suspended for three days for failing to meet minimum standards of performance; habitual tardiness; submitting false statements; and violating agency regulations.[2] In February 2017, Mr. Stiens received the letter of suspension and a detailed list of expectations to adhere to for a 90-day probation of conditional employment. Mr. Stiens signed the suspension letter which informed him that failure to comply with the expectations will result in additional disciplinary action up to and including dismissal.[3]

In March 2017, on recommendation of the program director and division director, Mr. Stiens received a termination letter from the MDA HR director. The termination letter was issued "in the interest of efficient administration and so that the good of [the][service will be served." The MDA cited several policy or probation violations made by Mr. Stiens since his February suspension. An affidavit was submitted containing the HR director's testimony to the violations in an affidavit used in support of MDA's motion for summary decision:

---

[1] RSMo § 261.020.

[2] During January and February 2017, Mr. Stiens had a 53% overage on expected mileage for business he reported inspecting; he reported working 50 hours in one week when monitoring showed that he worked only 28 hours; he reported visiting nine stores and updating stickers but on verification only two locations had inspection stickers; he reported visiting two locations but on verification both businesses had been permanently closed; and he misused the company vehicle.

[3] Mr. Stiens did not execute the list of expectations, however, because he thought compliance was impossible.

On March 8, 2017, [Mr. Stiens's] employment with MDA was terminated for misconduct and violating the terms of his conditional employment. Specifically, [Mr. Stiens]: performed country of origin labeling inspections[4] on March 2 and 3, 2017, despite his supervisor's prohibition of that activity on February 22, 2014; (b) failed to apply approval stickers on scales by the close of business that he purportedly inspected on March 6, 2017, in violation of MDA's policy inspection procedures; (c) entered "Regular Pay" totaling eight hours on his ETA timesheets, days that he was suspended without pay including February 23, 27, and 28, 2017; (d) failed to synchronize his computer to the WinWam at the end of the day on March 2, 2017; (e) failed to submit his daily report on March 2 and 6, 2017; and (f) entered overtime on his ETA timesheets for March 1, 2, 3, 6, and 7, 2017, without prior approval from his supervisor.

Mr. Stiens filed a *pro se* complaint with the AHC challenging the HR director's authority to terminate him, and two days later, the MDA made a delegation of authority to hire and discharge any employee to its deputy director and HR director. The MDA submitted a motion and suggestions in support for summary decision with affidavits of the HR director and Mr. Stiens's program manager. Mr. Stiens submitted a response to the MDA's motion and a motion to strike the affidavits, which was denied. Mr. Stiens also filed a motion for summary decision. The AHC granted the MDA's motion for summary decision and denied Mr. Stiens's motion for summary decision. Mr. Stiens filed a *pro se* petition for judicial review in the circuit court which sustained Mr. Stiens's dismissal under the AHC's ruling. Mr. Stiens appeals.

**Legal Analysis**

Mr. Stiens raises three points to challenge the AHC's summary decision. First, he contends that the AHC erred in finding that the HR director had employee termination authority. Second, Mr. Stiens claims that he presented evidence conflicting with the MDA's reasons for termination, and genuine issues of fact remain precluding a summary decision for MDA. Lastly, Mr. Stiens contends that two affidavits submitted in support of MDA's motion

---

[4] Hereinafter referred to as (COOL) inspections

3

for summary decision should have been stricken because they are not competent evidence. In this case, it is more appropriate to discuss these points out of order.

"On appeal from the circuit court's review of an agency decision, this Court reviews the action of the agency, not the action of the circuit court." *State Bd. Of Registration for the Healing Arts v. Trueblood,* 368 S.W.3d 259, 261 (Mo. App. W.D. 2012). In reviewing an AHC decision, "we must consider whether the AHC decision was unsupported by competent and substantial evidence based upon a review of the whole record, was unauthorized by law, was arbitrary, capricious, or unreasonable, or involved an abuse of discretion." *St. Charles Cnty. Ambulance Dist., Inc. v. Mo. Dep't of Health & Senior Servs.,* 248 S.W.3d 52, 53 (Mo. App. W.D. 2008).

In the second point, Mr. Stiens contends that the AHC erred by granting the MDA's motion for summary decision because genuine issues of material fact remain in dispute about the termination. "Summary decision" is modeled on the summary judgment procedure at the circuit court level and is proper if a party establishes facts that entitle any party to a favorable decision and no party genuinely disputes such fact. State Comm. of Marital and Family Therapists v. Haynes, 395 S.W. 3d 67, 69 (Mo. App. W.D. 2013). Whether summary decision should be granted is an issue of law, and, accordingly, this Court's review of such decisions is essentially *de novo. Id.* We view the record in the light most favorable to the party against whom summary decision was entered and determine whether there is a dispute as to any material fact and whether the movant was entitled to a decision in his or her favor as a matter of law. *Id*. "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might

4

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In February 2017, Mr. Stiens was suspended for multiple violations of MDA policy and given a detailed list of expectations to adhere to for a 90-day probation of conditional employment. Mr. Stiens signed the suspension notice that expressly stated, "Failure to comply with these expectations will result in additional disciplinary action, up to and including dismissal." Although Mr. Stiens signed the suspension notice, he did not execute the probation of conditional employment document because he thought the terms were impossible to satisfy. The MDA's March 2017 termination letter to Mr. Stiens recites six violations of policies, including the terms of probation.[5] Mr. Stiens lists five facts in dispute as to the legitimacy of the discharge:

(1) Entering "Regular Pay" for full days of work on the time sheet for the days he was suspended without pay on February 23rd, 27th, and 28th, 2017;

(2) Failing to synchronize his computer with WinWam on March 2nd and 3rd, 2017;

(3) Performing COOL inspections on March 1st, 2nd, and 3rd of 2017, contrary to direction from Supervisor Leroy Raymond[6];

(4) Failing to submit daily reports on March 2nd and 6th of 2017;

(5) Entering overtime on the ETA time sheet on March 1st- 3rd of 2017, and March 6th-7th of 2017, without prior approval.

---

[5] The termination letter was sent from the MDA on State letterhead, with the governor's name and the director of MDA on the header. The letter also read, "This action [the termination] is required in the interest of efficient administration and that the good of [the] service will be served thereby."

[6] Mr. Stiens does not dispute that Mr. Raymond gave him the directive or that he violated such directive. However, he does dispute that Mr. Raymond was a supervisor.

Viewing the record in the light most favorable to Mr. Stiens, we find no dispute as to any material fact of the termination. Under the terms of probation for conditional employment, Mr. Stiens was subject to termination for any one of the reasons set forth in the discharge letter, including not following the directives from supervisors within the department. Mr. Stiens's deposition testimony concedes fact (3), that he did perform COOL inspections on March 1, 2, and 3, 2017, contrary to Leroy Raymond's directive. Mr. Stiens disputes that Mr. Raymond was the supervisor. Mr. Stiens acknowledges, however, that his 2015 and 2016 performance appraisal ratings were performed by Mr. Raymond who is listed under "supervisor name." With regard to the remaining listed items, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* We need not consider whether the AHC erred because the other facts do not affect the outcome of the AHC's ruling and are unnecessary. This point is denied.

In the third point, Mr. Stiens contends that the AHC erred by failing to strike two affidavits submitted in support of the MDA's motion for summary decision. Mr. Stiens asserts that the affidavits are not admissible because each affidavit is prefaced with "the following information is within her personal knowledge and belief," and he contends that "beliefs" are inadmissible hearsay. Mr. Stiens also asserts that use of the phrase "at all relevant times" in the two affidavits constitutes a legal conclusion and not a statement of fact. Under 1 CSR 15–3.446 (6)(B), "Parties may establish a fact, or raise a dispute as to such facts, by admissible evidence. Admissible evidence includes. . .

[an] affidavit, or other evidence admissible under the law." Affidavits need not declare that statements are made from personal knowledge to be valid under Rule 74.04. *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 515–16 (Mo. App. W.D. 2014). Affidavits based on hearsay cannot be considered on summary judgment. *First Nat'l Bank v. Shirla Howard Revocable Living Tr.*, 561 S.W.3d 434 (Mo. Ct. App. 2018). Neither affidavit indicated that the testimony was based on anything other than personal knowledge, and the use of the word "belief" did not render the statements hearsay. Mr. Stiens's assertion that using the phrase "at all relevant times" in the affidavits was a legal conclusion is mistaken. Relevance is not solely a legal conclusion. The plain meaning of the word "relevant," as used in the affidavits, is "of contemporary interest." "relevant." Lexico.com 1995. https://www.lexico.com/en/definition/relevant (07 August 2019). This claim is without merit, and this point is denied.

In the first point, Mr. Stiens challenges as unauthorized by law the AHC's decision that the HR director had the authority to terminate him. According to Mr. Stiens, in establishing the MDA, the Legislature gave authority [solely] to the MDA director to discharge employees. The MDA argues that the "Director has the authority to hire and discharge employees in carrying out the Department duties, which includes delegating tasks to employees of the Department." Section 261.040 provides as follows:

7

The director of agriculture, before entering upon the duties of his office, shall give bond in the sum of five thousand dollars, which bond, when approved by the governor, shall be filed with the secretary of state. The director, within available appropriations, shall have authority to appoint a state fair secretary, clerks, stenographers, inspectors, and other employees necessary all at the salaries fixed by law for the administration of this law and other laws under his charge as a consolidated department conducted on an economical business basis. ***The director shall have authority to combine the duties of and to discharge any employee of the state department of agriculture.*** EAHC inspector shall be required to perform inspection duties under all inspection laws administered by the director. The director is hereby authorized to require and approve the bond of any employee responsible for the safe handling of any state revenue or fees, or state property, whenever he shall deem it reasonably necessary to protect the interests of the state. (*emphasis added*).

Section 261.040 has not been revised since 1939, and has not been the subject of any published litigation up to this point. So this is a case of first impression.

"This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Laut v. City of Arnold*, 491 S.W.3d 191, 205 (Mo. banc 2016) (citation omitted). When the plain language and legislative intent are clear, this Court is bound by the statutory language. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011). "This Court must enforce statutes as written, not as they might have been written." *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 192 (Mo. banc 2006).

Section 261.040 states in relevant part "[t]he director shall have authority to combine the duties of and to discharge any employee of the state department of agriculture." Neither party took the position that this phrase is ambiguous.[7] The issue as framed by Mr. Stiens in his brief reads:

Clearly, the legislature gave the MDA director of the Department of Agriculture the authority to discharge employees of the department, but there is a serious question whether the Director had the authority to delegate the power to discharge to any other person within the Department. However, that is not the focal

---

[7] The word "any" means: "1: one indifferently out of more than two: one or another: this, that or the other—used as a function word esp. in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select…" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1971), and we believe that it means what it says" the MDA director has the authority to discharge any department authority.

point of this appeal because the Director had not delegated that power to anyone at the time of appellant's discharge. The precise issue under authority to terminate employees of the Department at the time she terminated appellant's long-term employment with the Department.

We agree with Mr. Stiens that on March 8, 2017, the Director had not delegated authority to the HR director to discharge Mr. Stiens. On April 2, 2017, Mr. Stiens raised the argument that the authority to terminate him had not been delegated to the HR director. On April 5, 2017, the MDA director made an express formal delegation of appointing authority to the current HR director to discharge any employee. The MDA argues that the HR director had implied delegation under section 261.040, however, pertinent language of the delegation reads:

> Pursuant to the powers vested in me by Chapter 261, RSMo. and specifically Section 261.040.1, RSMo. as an appointing authority for the Missouri Department of Agriculture (the "Department"), I *hereby establish* the below listed individuals as delegated appointing authorities of the Department with the authority to hire and discharge any employee of the Department.
>
> Garret Hawkins, Deputy Director
> Jennifer Hentges, Human Resource Director

(emphasis added).

We find, based upon review of the whole record, that the delegation instrument represents an admission that the authority had never before been delegated. Further, the delegation was made specifically to individuals and not generally to the positions of "deputy director" or "HR director." We, therefore, find the AHC decision unauthorized by section 261.040, to the extent that the AHC has concluded that the termination by the HR director on March 8, 2017, was authorized by statute.

We also find that there is no reasonable basis for an implication to delegate termination authority. "The authority to subdelegate need not be expressed in the statute and may be implied if there is a reasonable basis for such implication." *Brown Group, Inc. v. AHC*, 649 S.W.2d 874, 878 (Mo. banc 1983). "[M]inisterial duties are the kind of duties that will most

9

frequently be delegated to subordinates and that the need to delegate ministerial duties could be reasonably implied from the impracticability of requiring the Director himself or herself to perform all such duties for a department with hundreds or thousands of personnel." *Brown Group*, 649 S.W.2d at 879; see also *Jackson v. Bd. of Directors of Sch. Dist. of Kansas City*, 9 S.W.3d 68, 71 (Mo. App. W.D. 2000); *State ex rel. Rogers v. Bd. of Police Comm'rs of Kansas City*, 995 S.W.2d 1, 3–4 (Mo. App. W.D. 1999); and *Strom v. Auto. Club Inter-Ins. Exch.*, 952 S.W.2d 794, 798 (Mo. App. S.D. 1997). In analyzing whether a reasonable basis for the implication exists, we may examine whether the sub-delegated duty is either so burdensome in nature as to inhibit the Director from discharging his or her other duties or whether it is ministerial. *Rogers*, 995 S.W.2d at 3; *Jackson*, 9 S.W.3d at 71. If the sub-delegated duty would inhibit the Director from discharging his or her other duties, we may imply that a right to delegate that duty in fact exists. *Id*.

We do not find *Brown Group*, controlling because authority is only implied when the subdelegation is to perform ministerial acts. *Brown Group*, 649 S.W.2d at 879. In *Rogers*, this Court found that the Board of Police Commissioners could not delegate to a hearing officer its duty of holding employee termination hearings, when the board itself was required to render the ultimate decision on whether an employee would be terminated. Like *Rogers*, we find that the duty to terminate employee was not burdensome and was not a "ministerial act," as described in *Brown Group*. *Rogers*, 995 S.W.2d at 4. During oral argument Mr. Stiens stated, without refutation by the MDA, that during his 17 year career only one person had been terminated. We also find, like *Rogers*, that there was "no express authority in ... [the statute] to delegate the duty of [termination]," *Id*., and that there was no reasonable basis in the statute under which power to delegate such authority could be implied. *Id*.

10

We do not agree, however, with Mr. Stiens that the termination is null and void. Viewing the record in the light most favorable to Mr. Stiens, we find no dispute as to any material fact of the termination. Under the terms of probation for conditional employment, Mr. Stiens was subject to termination for any reason set forth in the discharge letter, including not following directives from supervisors within the department. Mr. Stiens's deposition testimony concedes fact (3), that he did not perform COOL inspections on March 1, 2, and 3, 2017, contrary to Leroy Raymond's directive. We find the AHC decision that the termination was effective as of March 8, 2017, to be unauthorized by section 261.040. Still, when the MDA director responded to Mr. Stiens's administrative appeal in opposition, taking the position that Mr. Stiens was to be terminated, this act by the MDA director constituted an authorized termination under section 261.040. It is undisputed that the MDA director possessed the statutory authority to terminate Mr. Stiens's employment and, at the very latest, on the date that the MDA director responded to and opposed Mr. Stiens's administrative appeal of the termination, Mr. Stiens had full knowledge of the MDA's position that he was terminated. Since these facts were not established on the record before us, we must grant Mr. Stiens's first point on appeal and remand for the AHC to determine the effective and authorized date of termination. Based on this factual determination, Mr. Stiens may be entitled to a determination of back pay owed from March 8, 2017, up to and including the effective authorized date of termination. This point is granted.

## Conclusion

After a full review of the record, we find that points II and III of Mr. Stiens's appeal are without merit and are denied. We grant point I which sought a declaration of error by the circuit court (and AHC) that Mr. Stiens's termination on March 8, 2017, was unauthorized by section 261.040. Thus, we affirm the circuit court's judgment which affirmed the AHC'S ruling that the undisputed facts demonstrated that

11

Mr. Stiens was subject to termination. We reverse the circuit court's judgment, and remand this matter for further proceedings consistent with our ruling today, so that the AHC may develop a record as to the effective and authorized date of termination, a date that could not have occurred later than the date on which the MDA director opposed Mr. Stiens's administrative appellate challenge to the termination from employment. We reverse and remand for further proceedings consistent with this opinion.

/s/ *Thomas H. Newton*
Thomas H. Newton, Judge

Lisa White Hardwick, P.J. and Mark D. Pfeiffer, J. concur.